49 CCPA
**ROSELUX CHEMICAL CO., Inc., Bonnie-Lan, Inc., and Proxite Products, Inc., Appellants,**

v.

**PARSONS AMMONIA COMPANY, Inc., Appellee.**

Patent Appeal No. 6715.

United States Court of Customs and Patent Appeals.

March 9, 1962.

Amster & Levy, Edward F. Levy, and S. Stephen Baker, New York City, for appellants.

George B. Finnegan, Jr., New York City (John R. Murtha, Hamden, Conn., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

RICH, Judge.

Registration of "sudsy" is opposed. Opposers are appealing from the decision of the Patent Office Trademark Trial and Appeal Board (124 USPQ 524) dismissing three consolidated oppositions, Nos. 37,969, 37,975, and 37,976, all opposing the issuance of a Principal Register registration on appellee's application Ser. No. 38,558, filed October 8, 1957, of "sudsy" as a trademark for "aqueous ammonium hydroxide composition," as the goods are described in the application. Comprehension of the issues in this case requires a more accurate understanding of what the goods are. To that end we set forth some background.

Appellee, Parsons Ammonia Company, Inc. (hereinafter called "Parsons"), is the direct successor in business to one C. C. (Charles Chauncy) Parsons who, in 1876, introduced ammonia water, otherwise known as aqua ammonia, to the American housewife. Ammonia, in the technical sense, is a gas ($NH_3$) which is very soluble in water and when dissolved therein it forms, in part, ammonium hydroxide ($NH_4OH$), this solution being sometimes known loosely simply as "ammonia." According to "Chemicals of Commerce," by Foster Dee Snell and Cornelia T. Snell (1939), "In a somewhat modified form, usually containing a small amount of soap, it is sold as *household ammonia*." However, the record herein indicates "Household Ammonia" to be a registered Parsons trademark and the name under which C. C. Parsons introduced his product, which was aqua ammonia containing a small amount of vegetable oil, or possibly soap, the effect of which was to produce a cloudy appearance,[1] wherefore his product became widely and descriptively known as "cloudy ammonia."[2] This product, under the label "C. C. Parsons' Household Ammonia", continued substantially unchanged until 1948.

The application on appeal relies on section 2(f) of the Lanham Act (15 U.S.C. § 1052(f), 15 U.S.C.A. § 1052(f) ) and states:

"The mark has become distinctive of applicant's goods as evidenced by the showing submitted separately."

That showing consists of an affidavit of Parsons' president, Philip C. Ingham,

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. The record leaves it a little vague as to just what is used to make cloudy ammonia cloudy. Parsons' president testified: "The old product was nothing more than really gassed water, which is the average ammonia today in the cheap field. They put a certain degree of ammonia in water, probably mix a little oil or soft soaps to form a cloud. Clouds in ammonia have no cleaning ability whatsoever." And again, "Well, it was to a high degree, as I say, gassed water.

Q76. Was there anything else in it? A. Just a little—we used to use a white oil or a red oil to form the cloud." Parsons' sales manager testified: "Your old style cloudy ammonia was formulated with a soap compound in it."

2. The market significance of the cloudy appearance of Parsons' original product is made clear by the following which appeared on the label used in 1881, as shown in the 75th anniversary booklet hereinafter referred to: "Clear ammonia irritates the skin and discolors white fabrics. Household ammonia is clear ammonia combined with substances which give a cloudy appearance and prevent all injurious action."

who, before becoming president in 1955, had been with the company since 1938 as salesman, sales manager and vice president. To his affidavit there are attached numerous exhibits. One of them is a book published in 1951 on the 75th anniversary of Parsons' single product, "Household Ammonia." After reciting how the company and its product had weathered World War I, the Great Depression, and World War II, it says:

"The war over, the business continuously increased. But the world was changed and full of new ideas. The magic of modern chemistry had produced a host of synthetic detergents that were different and interesting. None of them appeared to take the place of ammonia as a cleanser, but they did have certain quite remarkable properties.

"In August 1946, it occurred to Mr. P. C. Ingham, Sales Manager of the Parsons Ammonia Co., that if these properties could be incorporated in Household Ammonia without destroying its essential character, he would have something that would be a salesman's dream come true: a product so obviously superior that no words, only a demonstration, would be needed to sell it. It was a good dream and experiments were enthusiastically undertaken. They were not encouraging; it was like trying to mix cats and dogs.

"But in September 1947 after a year of continuous experimentation and equally continuous failure, success was finally achieved. A compound was produced that looked so good that a patent on it was immediately applied for.

"This was Parsons Household Ammonia still, but something new had been added. It was not soapy yet it formed a thick suds at the slightest

provocation. So it was decided to call the new product Parsons Sudsy Household Ammonia."

The foregoing is advertising. The record in this case shows that the formulation for the new sudsy product, essentially a combination of synthetic detergent and aqua ammonia, was worked out for Parsons by Foster D. Snell, Inc., consulting chemists in New York City, carrying out an idea conceived by Mr. Ingham.[3]

The record also shows that to avoid deteriorating the value of the old "C.C. Parsons' Household Ammonia" on hand in stores, the new synthetic detergent-containing product was gradually substituted as new orders were filled, beginning in 1948, without making any change in the front labels on the bottles. Bottles also carried a back label, however, and in 1948 it was modified to have a light blue background of small soap bubbles and to say at the top, "PARSONS' *Sudsy* HOUSEHOLD AMMONIA." The "Directions" printed at the bottom read, in part:

"Two ounces to each gallon of water—SWISH UP SUDS in dish pan or pail. Use more or less PARSONS' HOUSEHOLD AMMONIA as required * * * speedy penetrating suds."

In 1949, Mr. Ingham testified, Parsons put "NEW" and "SUDSY" on the front label where previously it had said "ONE QUART" (see illustration, infra) but, when viewing a bottle on the shelf, he said, "It was so small you couldn't see it." A new back label was designed in which a little more prominence was given to the word "Sudsy" in the heading, that word being enlarged, in blue, and in quotation marks, but still in the same phrase as in 1948. The directions still told the user to "swish up suds," as they do to this day.

---

3. Beyond showing that the new product is a composition containing aqua ammonia and a synthetic detergent and probably other ingredients to make blending possible and prevent precipitation on standing, the record does not disclose just what the composition is. The record indicates that Parsons obtained a patent on it on May 29, 1951, on application Ser. No. 6351, but the patent is not of record nor is its number disclosed.

In 1950 the word "sudsy" in prominent lower-case type was added to the top of the front label, located in a rectangular panel with a relatively inconspicuous background representing bubbles, as shown in the facsimile we have here reproduced together with the top portion of the back label and a reproduction of the application drawing.

TOP OF BACK LABEL

◄——— FRONT LABEL

APPLICATION DRAWING

Since Parsons has not relied for registrability on the bubble background, but only on the significance of the word "sudsy," we are disregarding the background in this discussion.

The specimen front label attached to the application contains one added feature not shown in the above illustration, namely, a panel, about half the height of the top panel in which "sudsy" appears, extending across the label directly beneath the word "AMMONIA" and filled by the words "ALL-PURPOSE CLEANER." Mr. Ingham said this change was made in 1956. The label shown above therefore represents the one in use during most of the period between first use in 1948 and the filing of the application in 1957. At the time of application, therefore, the prominent words on the front label, where one would expect to find whatever trademark was being used on the product, were "SUDSY C.C.PARSONS' HOUSEHOLD AMMONIA ALL-PURPOSE CLEANER." "C.C.PARSONS' HOUSEHOLD AMMONIA" is in white letters on a black background, the lattice-work design is black on a gold background, the "sudsy" panel is printed in red on white and the "ALL-PURPOSE CLEANER" panel in white on red. The antidote notice is red on white.

The board summed up opposers' position thus:

"Each of the opposers alleges that it is engaged in selling ammonia for home use; that the term 'sudsy' describes a characteristic of such product; that it and others use the term 'sudsy' on labels for their ammonia products for purposes of description; and that a registration of 'Sudsy' to applicant would interfere with the right to use that term in conection with the merchandising and sale of ammonia."

Does "sudsy" Describe The Product?

The first issue which emerges in this case is the descriptiveness of the common English word "sudsy" in the context of its use on "C.C.Parsons' Household Ammonia." This necessitates consideration of the characteristics of the product.

The pre-1948 Parsons' ammonia, the cloudy type, did not form substantial suds when shaken in its bottle nor did it make a solution, when diluted for use, in which suds could be worked up. The change in the product which took place in 1948, the addition of or combination with a synthetic detergent,[4] resulted in a new product which did both. The first advertisement which launched the promotion of the new product was headed, "NEW Parsons' Household Ammonia now with exclusive 'SUDSY' ACTION." An early promotion technique involved a display set up in stores surmounted by a panel reading, "It's New TRY THE 'SUDSY' TEST Shake the Bottle" and provided two bottles hanging by strings labeled "Old" and "New". Mr. Ingham testified as follows about the name and the display:

"XQ368. With regard to your adoption of the name for the product, you mentioned that 'Sudsy' had a close association with the product. What, particularly, did you mean by that? A. Well, as I say, it was really sudsy, and when you put it in water, it sudsed. Other ammonias wouldn't.

"XQ369. You mean the cloudy one? A. The 'Sudsy' ammonia would. No, cloudy ammonias across the country won't do it today, unless they have detergents in them.

"XQ370. Incidentally, with regard to Exhibit 6, which I don't have handy, but which was the photograph of the display which said 'Try the "Sudsy" Test,' what was the 'Sudsy' test? A. I will tell you that, not because I am the instigator. The 'Sudsy' test was this: You took one bottle, put regular ammonia, whether it was A & P or whatever it was, in there with water, equal amounts, and did the same thing with 'Sudsy.' You shook them up. Nothing happened with the regular ammonia. 'Sudsy' ammonia, the suds almost threw the cap off. So the woman could shake it on the thing there and find the difference immediately."

We add thereto the fact that the new product is sudsy whether water is added to it or not. After all, it is primarily "gassed water," as Mr. Ingham testified. (See footnote 1). One or two shakes of a partly filled bottle of Parsons' detergent ammonia, sold under the above illustrated label, which material is in evidence, fills the bottle to its neck with long-lasting suds.

Mr. Ingham prepared a "Chronology" of the development and promotion of the new product which is in evidence. Un-

---

4. Technically, both common soap, apparently used to cloud ammonia in some instances, and aqua ammonia itself are "detergents," which word is defined in Webster's New Collegiate Dictionary as meaning: "A cleansing agent, as water, soap, or a soluble or liquid preparation ('soapless soap'), usually synthetic, that resembles soap in the ability to emulsify oils and hold dirt in suspension." The term "detergent" as used by the parties herein is in the "soapless soap" synthetic sense, though Parsons' witnesses pointed out that ammonia is a detergent too. We do not believe many consumers would know that but would think of detergent ammonia as aqua ammonia containing one of the many now popular synthetic liquid detergents commonly sold for household washing and cleaning uses.

der the year 1948 the following items are of interest:

"June. Pre-marketing test in Washington, D. C. We were anxious to break into print before someone beat us to it.

"September. On the 16th we finally were able to really 'cut loose' and promote SUDSY in suitable fashion. New York (Metropolitan area) 20 newspapers plus a 5-day week radio spot, with announcer shaking the old and new bottles for luncheon audience. This was excellent.

\* \* \* \* \* \*

"COMMENT: The highlight of our SUDSY formula is the fact we can demonstrate its fine qualities to every buyer through our bottle test \* \* \* and, in some instances, the 'sudsing action' in water in wash basin. Up to this time no one has been able to demonstrate any ammonia, so every buyer we have contacted has evinced both surprise and interest. The great point is: We, through our efforts have produced an ammonia that in time will make all ammonia of present day origin obsolete.

\* \* \* \* \*

" \* \* \* In the Chicago area we hope to really build and beat our competition to the tape, for there is no doubt that we will see 'foaming', 'bubbling', and even 'sudsy' types of ammonia in 1949. However, we are first and there will be lots of delay and headaches for the ones who try to copy our formula."

"Sudsy" is a common word defined in Webster's New International Dictionary, 2nd Ed. (1937) as meaning "Full of suds; frothy; foamy." It is unnecessary to labor the issue of descriptiveness because Parsons' witnesses and briefs admit the descriptiveness of the word "sudsy." One instance should suffice. Mr. Ingham, president of Parsons, asked on cross examination about an application to register the word, filed July 29, 1950, and why it was abandoned, replied, "Because, at that time, there was no question that the word was descriptive, so we didn't pursue it."

█ We find it impossible to reach any conclusion from such admissions, and there are many like it, other than that "sudsy ammonia" is a common descriptive name for the product, contrary to the board's finding on this point. The board said:

"In fact, the common descriptive name of the goods is ammonia, and the terms 'clear', 'cloudy', 'detergent' and 'pine' indicate the types of ammonia."

There seems to be implicit in this statement an assumption, for which there is no legal foundation, that a product has only one common descriptive name, and that such name here is "detergent ammonia." Consider, however, that the product commonly known as tooth paste is also commonly known as dentifrice and dental cream. A gravestone is also commonly known as a headstone, a tombstone and a monument. One common descriptive name of the product to which "sudsy" is applied is "detergent ammonia" but proof of this fact does not establish that "sudsy ammonia" is not also a common descriptive name. Another descriptive name is "ammonium hydroxide solution containing synthetic detergent". However, in considering whether "sudsy ammonia" is a *common* descriptive name of the product we cannot fail to take into consideration the class of people who will commonly be using it and what they will commonly call it. The record here shows, through the testimony of Mr. Ingham and in other respects, that the product is intended, not for chemists, but in his words for "Mrs. Consumer," the average housewife. Assuming her familiarity with clear ammonia or cloudy ammonia or even pine-scented ammonia, the thing she is most likely to remember about this new product especially after having once used it or seen it demonstrated, is that it is *sudsy* ammonia. That is the one characteristic that was "plugged." It seems to us that this is as clearly its common

descriptive name as is "detergent ammonia." Surely "sudsy ammonia" is as clearly a common name as is "cloudy ammonia."

■ For these reasons we are constrained to disagree with one of the main premises of the board's decision, that the record does not show that "sudsy" is a type designation for an ammonia compound. There is no apparent reason for omitting "sudsy" from the list of type designations. Not one of the others as aptly describes the compound here involved.

### Uses of "sudsy" by Others

Opposers' main point is that the word sought to be registered is so highly descriptive that they and others should be left free to use it. They showed that they and others had already used "sudsy" descriptively on ammonia products. The following uses are shown by the record:

B. T. Babbitt, Inc., New York, marketed as early as 1954 or 1955 a product labeled "Instant Am-O powdered AMMONIA". The label in evidence bears the words "SUDSY NON-POISONOUS", one above the other, in prominent type above the more prominently displayed trademark "Am-O." The label also states that the contents of the can is "equal to 1½ quarts of bottled ammonia."

The Great Atlantic & Pacific Tea Company was shown to have sold a liquid ammonia product. The label in evidence reads thus:

"N E W !
SUDSY DETERGENT
Bright Sail
A M M O N I A
For Home Use"

with a picture of a sailboat in the background.

American Stores Co., Philadelphia, was admitted by Mr. Ingham, testifying on cross examination in May, 1959, to have recently brought out a product labeled "SPEEDUP Sudsy AMMONIA with PINE Detergent." The label is in evidence.

Mr. Ingham also said he was acquainted with the existence of a product called "Sea Mist Sudsy Ammonia with Pine Detergent," marketed by Trager Mfg. Co., Inc., of Scranton, Pa., which product is advertised in undated pages from a book of product listings put out by "Seaman Brothers, the White Rose people," a large wholesale grocery company. Testimony showed that product had probably been on the market at least as early as May 1957. Around May 1959 the label appears to have been changed to omit "sudsy" and to say "Detergent Ammonia with Swiss Pine Fragrance."

Opposers' own products are as follows:

Roselux Chemical Co., Inc., has marketed "Rose-X SUDSY PINE DETERGENT AMMONIA" from about October 1957. Preparation for such sales evidently began several months earlier.

Proxite Products, Inc. was selling PROX Bonnie Sudsy AMMONIA" as early as February 28, 1955, and the remaining opposer, Bonnie-Lan, Inc., a corporation under the same management at the same address, sold "SUDSY Bonnie Lanolin AMMONIA" from mid-1956 on.

### Parsons' Position

We think Parsons tacitly admits "sudsy" to be descriptive. It insists, however, that it is not "generic" and so is capable of becoming distinctive. The main burden of its argument is that its evidence of acquired distinctiveness is "overwhelming."

Parsons has established that it is the country's major producer of ammonia for home use, the only one with national distribution, that its sales in 1958 exceeded $3,000,000 (its only product being ammonia), and that "sudsy C.C.Parsons' Household Ammonia" constitutes 95% of its sales, the rest being some private brands it makes for others. In other words, the only product Parsons sells directly is the single product "sudsy C.C.Parsons' Household Ammonia." It claims to have spent over $1,000,000 in promoting a product which its officers like to think of with a certain fondness as "SUDSY," the sales of which are more

than double the sales of its old product prior to 1949. Parsons' counsel goes even farther and claims that "more than $1,000,000 have been spent advertising SUDSY as a trademark." This is patentably not the fact. While advertising has featured the word "sudsy" and emphasized the sudsy characteristic of the "New" product, never, until long after its present application was filed, if then, did its advertising and labeling cease to promote "C.C.PARSONS' HOUSEHOLD AMMONIA," and that is the product it continued to sell. The greatest departure it has made, and that only at the latest time of which evidence was given in the opposition, 1959, is to change "Household Ammonia" to "Detergent Ammonia," thereby replacing the venerable trademark "Household" with a purely descriptive word. The product is still featured as C.C.Parsons' ammonia, that being the primary designation of origin.

It has produced the testimony of about twenty witnesses that they associated "Sudsy" ammonia only with Parsons. These witnesses were employees, brokers, retailers, and like people in the trade, working in the chain of distribution. Since Parsons was the only purveyor of a sudsy detergent ammonia from 1948 until about 1954 or 1955, such an association within the trade would be inevitable. There are also some unsolicited letters from ecstatic consumers referring with affection to "Sudsy." Under the circumstances, the product being a good one and plugged over radio and TV as "Sudsy," a file of such letters was bound to result.

However, proof of *distinctiveness* requires more than proof of the existence of a relatively small number of people who associate the word "sudsy" with Parsons. Distinctiveness means that the *primary* meaning of the word, in this limited field, is as a designation of source rather than of a characteristic of the product. We think the proof does not establish this.

To show the state of the ultimate consumer's mind with respect to the word "sudsy" as applied to ammonia, Parsons has referred to two independent surveys, one made by Home Makers Guild of America for Owens-Illinois Glass Company in 1955 and the other by Good Housekeeping Magazine in 1959. Taking Parsons' own interpretation of the results, presumably most favorable to its contention, we see that the Home Makers' survey shows, at best, that of the *actual users* of Parsons' product only 9% referred to it simply as "Sudsy." The other 91% called it "Parsons' Household Ammonia" or simply "Household." The Good Housekeeping survey, at best, shows that those designating Parsons' product called it "C.C.Parsons" 190 times, "Parsons' Sudsy" 42 times, "Parsons Household" 14 times, "Sudsy" alone 31 times (assuming a competing product was not meant), "Household" alone 14 times, and "Sudsy Pine" once. Those actually referring to Parsons' product called it simply "Sudsy" in only about 10% of the instances. The surveys are open to other criticisms but it seems sufficient to say that even if 10% of the people who actually know the product call it "sudsy" alone, we cannot assume therefrom that the primary significance of the word to purchasers of ammonia is as a designation of origin. Evidently 90% or so of actual users look to other features on the label for that purpose.

Based on such evidence, Parsons is here asking for a Principal Register registration which, under section 7(b), (15 U.S.C. § 1057(b), 15 U.S.C.A. § 1057(b) ), would be prima facie evidence of its "exclusive right to use" the common word "sudsy" on sudsy detergent ammonia. From what we have said it will be evident that in our opinion "sudsy ammonia" and "sudsy detergent ammonia" are common descriptive names of the composition named in Parsons' application and that anyone who sells such a composition is entitled to call it by these names, as many had done before, or were doing, when Parsons applied for registration. The fact that Parsons was enjoying sales of such product many times the volume of all other sellers combined, partly as the result of advertising and plant ex-

pansion across the country which others, perhaps did not choose to do, is no ground for impairing the rights of those others, though they be small, to be free from possible restraint in the use of the common descriptive names of their products. Neither is it material here, as Parsons undertook to show, that some of the so-called "sudsy" products marketed by opposers were not in fact sudsy because they contained no detergent. Likewise immaterial is evidence that truly sudsy products were sold without using the word "sudsy" on the label. Desire to avoid possible litigation expense could produce such a result.

■ Registrability of "sudsy" must be determined on the basis of the facts as they exist at the time when the issue of registrability is under consideration. DeWalt, Inc. v. Magna Power Tool Corporation, 289 F.2d 656, 48 CCPA 909, 129 USPQ 275. The board found that Parsons, "at the time it filed its application and for at least two years prior thereto, was not the exclusive user of the subject matter of the application." It seems to us that that finding alone should have been sufficient to support a finding of lack of "distinctiveness." The board, however, regarded this as a merely procedural matter which shifted "the burden of going forward" to Parsons. Apparently the board felt that because Parsons, in going forward, proved that at an earlier time, between 1949 and 1955, it had "impressive" gross sales and enjoyed "rapid growth of sales" of "sudsy" ammonia, and because "persons engaged in the retailing of ammonia" and the writers of some unsolicited letters from housewives received in 1955 and thereafter "associate 'SUDSY' only with applicant," Parsons could register the term in 1957. Such proofs, however, are not legally adequate to support the board's conclusion.

■ The legal principles applicable here are those enunciated by the United States Supreme Court in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, 39 USPQ 296.

See, in particular, the aspects of that case which we discussed in In re Deister Concentrator Co., Inc., 289 F.2d 496, 48 CCPA 952, 129 USPQ 314. To show that a common descriptive name has acquired a de facto secondary meaning, in the sense that some or even many people have come to associate it with a particular producer, is not in itself enough to show that it has become entitled to registration as a trademark. The same is true of a part of such a name.

## Summary

■ Two common descriptive names of the product here involved are "sudsy detergent ammonia," and, more succinctly, "sudsy ammonia." While we can agree with the board, literally, that the record does not show that "sudsy" alone is a common descriptive *name*, it is, as an adjective, half of a common descriptive name. As such, contrary to the board's finding, it is clearly, and in common parlance, a type designation. It is, beyond question, descriptive. Parsons' uses of the word on its product, in the forms "sudsy C.C.Parsons' Household Ammonia," "Parsons' sudsy ammonia," "Parsons' sudsy Detergent Ammonia," notwithstanding a certain amount of emphasis on "sudsy," have been descriptive uses. Some uses in label texts and some advertising of the word "sudsy" as a sort of nickname or familiar name for the product, while they may have caused some users to refer to the product itself as "Sudsy," fall far short of establishing that this descriptive word has acquired a new primary meaning indicative of the origin of the goods. As of the time when registration is being sought, others are, or in the immediate past were, using the term descriptively on the same or closely similar products, precluding the possibility that it could, to purchasers generally, indicate origin only in Parsons. The word "sudsy" started as a type designation and, on the record before us, it is still primarily such a word.

For the above reasons, Parsons is not entitled to the registration sought and

the decision of the board must be reversed.

Reversed.

WORLEY, Chief Judge, and MARTIN, J., concur in result only.