**Application of IDEAL INDUSTRIES, INC.**

**Patent Appeal No. 74–581.**

United States Court of Customs and Patent Appeals.

Jan. 23, 1975.

Alfred H. Plyer, Jr., Kinzer, Plyer, Dorn & McEachran, Chicago, Ill., attorney of record, for appellant.

Before RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 180 USPQ 408 (1973), affirming the examiner's ex parte refusal to register the wordmark WING–NUT for "connecting members for joining the ends of electric wires or conductors," application serial No. 356,684, filed April 13, 1970, claiming first use June 12, 1959. We reverse.

The application as filed expressly claimed the benefit of § 2(f) of the Trademark Act of 1946 (15 U.S.C. § 1052(f)) by virtue of the inclusion, in the declaration by applicant's president (see 37 CFR 2.20), of the following:

> The mark has become distinctive of applicant's goods as a result of substantially exclusive and continuous use in interstate commerce for the five years next preceding the date of filing of this application.

By attorney's amendment filed June 29, 1972, the declaration was augmented by adding the following factual statement:

> Additional proof of distinctiveness is of record in the file of this application.

The statutory basis of the refusal to register is that WING–NUT is "merely descriptive" within the meaning of § 2(e) of the Trademark Act (15 U.S.C. § 1052(e)). The involved statutory provisions read:

> Sec. 2. *Trade-marks registrable on the principal register*
>
> No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

* * * * * *

> (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive * * * of them * * *;
>
> (f) Except as expressly excluded in paragraphs (a)–(d) of this section, nothing [herein] shall prevent the registration of a mark used by the applicant *which has become distinctive* of the applicant's goods in commerce. The Commissioner *may* accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration. [Emphasis added.]

Applicant submitted proofs as contemplated in § 2(f), but the Commissioner (acting through the examiner and the board), as the section permits him to do, declined to accept them as overcoming the prohibition of § 2(e). This case, therefore, presents another of those situations requiring resolution of the conflict between the prohibition of § 2(e) and the permission of § 2(f), which depends on the degree of the "descriptiveness" of the mark when applied to the goods named in the application and the impact of the evidence of distinctiveness.

On the descriptiveness question, the examiner deemed himself governed, and the case to be controlled, by a prior decision of the board on an application to register WING–NUT for these goods by this applicant, serial No. 85,867, filed Nov. 23, 1959, rendered on June 7, 1962, In re Ideal Industries, Inc., 134 USPQ 416. Notice is taken of the fact that that application was filed within about five months of the claimed first use of the mark and, perforce, there was no reliance on § 2(f) in that proceeding. The board decision herein disposed of the examiner's controlling-effect argument as follows:

We agree with applicant to the extent that our prior decision is not binding in this proceeding in that we must consider all the evidence now on file in order to determine whether or not registration is presently precluded under Section 2(e)(1) of the Act.

The board then considered the evidence and concluded that WING–NUT "serves as a part of the apt descriptive name for applicant's goods" and, for that reason, cannot be registered.

The basis of our disagreement with the board's conclusion is fairly simple and clearcut but its explanation requires further factual background. We do not agree that WING–NUT is *the* "apt descriptive name," or any *part* of it, in the sense that "banana" is the name of that elongated, usually tapering tropical fruit with soft, pulpy flesh enclosed in a soft usually yellow rind (see Webster's Seventh New Collegiate Dictionary). There is often, as here, a subtle distinction between trademarks and the names of things. (See, for examples of this perplexity, the dissenting opinion in In re Cooper, 254 F.2d 611, 45 CCPA 923 (1958), especially the recitation of well-known trademarks which seemed to the dissenter to be names.) The distinction is one which must be carefully maintained or many valuable trademark rights will be lost. The burden rests particularly on the judiciary, which not only has the last word on the matter but also has the obligation to protect the public in its right to use the language.

Turning now to the background, we have to delve into the meaning of WING–NUT in the relevant trade—that is to say, its descriptive vis-à-vis its trademark or origin-indicating aspects—and compare it with the actual "name" of the goods.

"Wing nut" is, as many people know and as may be seen in any good American dictionary, the name of a type of nut (in the mechanical sense of a perforated block, usually of metal, having an internal screw thread to be used on a bolt or screw) which has wings affording a grip for the thumb and finger. It is not contended by the Patent Office that the goods here involved are wing nuts in this sense. Appellant is, therefore, not being denied registration because it is attempting to register WING–NUT for the goods commonly known by that name.

As filed, the application described the goods as "electrical connectors," and this was amended to the statement above quoted, "connecting members for joining the ends of electric wires or conductors," which appears to mean much the same thing but to be more specific. Other evidence of record shows that the goods are marketed under the *name* "wire connector" or simply "connector." In the broad sense of those terms, there are, of course, many types of connectors, but in the common parlance of the electrician a wire connector is a small, thimble-like device made of electrical insulating material on the inside of which is a conical, spirally-grooved, metallic core, usually made of coiled spring wire. Two or more bare wire ends are joined by forcing them together into the end of the connector which is then twisted onto them, which twists the wires together and secures them in a wire-crushing grip, at the same time covering the joint with insulation. An illustration of such a device appears at the center of the trademark "Wire Nut" with design as hereinafter reproduced.

Prior to adoption and use of the WING–NUT mark at bar, appellant was using the marks "Wire Nuts" and "Wire Nut" on which it or a predecessor in business obtained several registrations, the first of which was obtained under the Act of March 19, 1920, registered Sept. 17, 1946, No. 424,062, claiming first use Feb. 1, 1939. The same mark was re-registered under the 1946 Act, Reg. No. 531,715, claiming the benefit of § 2(f). Both of these registrations included a design similar to that below. Reg. No. 624,837, Apr. 10, 1956, covered WIRE–NUTS as a wordmark. The mark was changed to the singular form in 1946, and WIRE NUT was registered

Oct. 25, 1960, Reg. No. 706,232. "Wire Nut" with design, as follows,

was registered Aug. 27, 1963, Reg. No. 755,386. It is thus seen that in this field the term "Wire Nut" has long been the trademark of the appellant who claims that no one else in the industry uses the word "nut" in connection with wire connectors. The Patent Office has produced no evidence to the contrary. Nothing of record suggests that anyone other than appellant refers to these connectors as nuts, nor do they meet the dictionary definitions of nuts.

In 1959—accepting the allegation of the application as true—appellant came out with a new connector provided with integral opposed side flanges or wings, similar, at least functionally, to the wings of a true wing nut, using thereon the mark WING–NUT. As appellant's brief puts it:

> Thus, the selection of "WING–NUT" for the 1959 form of screw-on connector was a natural outgrowth from its "WIRE–NUT" parent some twenty years earlier.

> There is no evidence that anyone other than Appellant, has ever used "nut" alone, or in combination either with "wire" or "wing" for any type of electrical connector. So it is clear that Appellant's use of "WING–NUT" has been exclusive since its adoption.

We find the record is in accord with those assertions.

The allegation of exclusive and continuous use by appellant contained in the application, referring to the 5-year period prior to its filing date, has not been challenged by the Patent Office. There is no indication that the actual length of the period was not 11 years. Further evidence submitted shows sales of goods under the WING–NUT mark from 1962 through 1969 amounting to $2,679,886.

Since the item is very inexpensive, it is not surprising that in that period 1,226,-676,000 WING–NUT connectors were sold. A total of $122,427 is said to have been spent on advertising WING–NUT connectors during the same period.

Of course, every mark sought to be registered by taking advantage of § 2(f) involves descriptiveness to some degree. WING–NUT does so in the word "wing" because appellant's goods admittedly have wings. Since they are "screwed" onto wire ends, the word "nut" might be said to be somewhat descriptive too, and this led the board to conclude that WING–NUT was an "apt descriptive name," or at least "a part of the apt descriptive name," presumably thinking of the expression "WING–NUT wire connectors." Aptness cannot be gainsaid. On the other hand, the undisputed facts according to the record before us are that the name of the goods is wire connectors, that in the trade they are not descriptively called nuts, that WIRE NUT is the registered trademark of appellant, who is presumed under § 7(b) of the Trademark Act (15 U.S.C. § 1057(b)) to have the exclusive right to use the mark in commerce, and that at least since April 1965 and probably longer appellant alone and extensively has used WING–NUT on flanged wire connectors. It is obviously not necessary to call them wire nuts in order to give them a name. Accurately and according to trade custom, they are connectors and, having flanges or wings, they can be specifically designated as flanged or winged, or even called wing connectors.

Fundamentally, it is our view that since the goods are not nuts or known as nuts (unless they originate with appellant), the board erred in holding WING–NUT to be so descriptive under § 2(e) as to be unable to distinguish appellant's goods and to become distinctive within the meaning of § 2(f).

The facts in this case, as shown by the present record, distinguish it from the case cited by the examiner in his final

rejection, In re Dade Reagents, Inc., 130 USPQ 352 (TTAB 1961), which held SPECIFIC ALBUMIN to be the common descriptive name of the product, which name was also in use by a competitor. The board cited no further cases in support of the refusal to register. The solicitor relies on two of our decisions: In re Preformed Line Products Co., 323 F.2d 1007, 51 CCPA 775 (1963), and Roselux Chemical Co. v. Parsons Ammonia Co., 299 F.2d 855, 49 CCPA 931 (1962). In *Preformed,* we held the single word "preformed" sought to be registered to be merely descriptive of certain of appellant's goods which had been "helically shaped in advance" and that the primary function of the word was to describe a characteristic of the product. In *Roselux,* the Parsons Ammonia Company sought to register "sudsy" for "aqueous ammonium hydroxide composition"—its well-known "Household Ammonia" to which some detergent had been added which made it sudsy. We held "sudsy" to be purely descriptive, and "sudsy ammonia" to be a common name for the product. In that opposition proceeding the evidence also showed that others were using "sudsy" to describe similar ammonia products. The factual differences distinguish these two cases from the case at bar in which we are dealing with a two-word mark, WING–NUT, half of which is clearly not descriptive.

There is evidence in the form of letters from electrical contractors who use appellant's WING–NUT wire connectors which, though not free from ambiguity, tends, we believe, to show that users recognize WING–NUT as a trademark. This, taken with the allegation of exclusive and continuous use and the evidence of the volume of that use, suffices to show that WING–NUT has in fact become prima facie distinctive of appellant's goods.

The decision refusing registration is therefore reversed.

Reversed.

MARKEY, C. J., took no part in the consideration or decision of this case.