51 CCPA

**Application of MINNESOTA MINING AND MANUFACTURING COMPANY.**

Patent Appeal No. 7174.

United States Court of Customs and Patent Appeals.

Aug. 27, 1964.

Mark W. Gehan, Charles H. Lauder, St. Paul, Minn. (Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (136 U.S.P.Q. 676, abstract) refusing to register, on the Supplemental Register, appellant's mark on the sole ground that it constitutes the *overall configuration* of the goods and as such "does not constitute proper subject matter for registra-

tion" on the Supplemental Register. No reference is relied on.

The board so held after expressly admitting that section 23 of the Lanham Act (15 U.S.C. § 1091) "specifically provides for the registration of a mark which consists of a 'configuration of goods'." To this we would add the proviso in the statement in section 23 of what the term "mark" includes, that "such mark must be *capable* of distinguishing the applicant's goods [from the goods of others]" (our emphasis), which limitation the board unquestionably assumed.

 The board appears to have sustained the examiner's refusal to register for the same reason stated by the examiner in his Answer, namely, that the term "configuration of goods" as used in section 23 must be so interpreted as to restrict it to "the configuration of a particular part or feature of the article and must not extend to the shape or design of the entire device." The board said the same thing in substance. But section 23 contains no such limitation.[1]

We had this precise contention before us in In re Bourns, 252 F.2d 582, 45 CCPA 821, wherein we said:

"It is contended in the brief on behalf of the Commissioner that 'configuration of goods,' as used in section 23, 'must be restricted to the configuration of a particular part or feature of the article and may not

extend to the shape or design of the entire device.' We find it unnecessary to rule on that contention, however, since we are of the opinion the * * * configuration of appellant's potentiometer *is not capable* of distinguishing it from the goods of others within the meaning of section 23." [Emphasis added.]

In that case we also pointed out that the provision for the registration of "configuration of goods" had not previously been adjudicated by this court, adding,

"However, a somewhat similar question has been passed on with respect to packages, and it would seem the same principles would be fairly applicable in both cases. In fact, in some instances, such as perfumes or beverages sold in ornamental bottles designed to be used after the contents have been disposed of, the line of distinction between the package and configuration of the goods is quite vague."

We have recently decided In re Mogen David Wine Corp., 328 F.2d 925, 51 CCPA ——, in which we reversed a refusal to register, as a trademark on the Principal Register, the *overall configuration* of an ornamental *container* for a beverage. There the board, for reasons it is not necessary to go into here, had refused to consider evidence that the bottle configuration functioned as an indication of origin so as to be a trademark.

1. The Patent Office, in saying 'configuration of goods" means only configuration of a *part* or *feature*, relies on the opinion of the District Court for the District of Columbia in Alan Wood Steel Co. v. Watson, 150 F.Supp. 861, wherein the court did come to that conclusion and gave it as one of three reasons for affirming a refusal to register the overall surface configuration of certain nonskid steel plate flooring. The other two reasons were that the shape was *functional* and that it *could not* indicate origin because others than the plaintiff used the shape under license.

On the issue of restricting the meaning of the statutory language, the District Court relied on what it considered to be "continuous construction placed

on a statute by an administrative agency," namely, the Patent Office. The only indication of what that practice was appears in the cited case of Ex parte Mars Signal-Light Co., 85 U.S.P.Q. 173, wherein an Assistant Commissioner, in dicta, while stating that "so far as I am aware there is no apt precedent," that "none of * * * [the cases decided before the 1946 Trademark Act] can have any precise bearing on what might be registrable under the new Act," and stating that "While configuration may mean over-all shape it may also mean the form of a particular part or characteristic," came to the conclusion that "on the basis of general principles [not stated] the latter construction *may* be the proper one." (Emphasis added.)

We remanded the case for a decision on that issue because we deemed the overall configuration of the bottle to be *capable* of indicating origin, doing so without passing on the issue of whether it did so in fact.

◼ The present application is to register on the Supplemental Register and, as we stated in *Bourns*, section 23, which establishes that register, provides for the registration of "configuration of goods," without qualification as to kind, if *"capable* of distinguishing applicant's goods." Whether they do or not in fact, it is unnecessary to consider.

Two conditions to registration on the Supplemental Register, stated in *Bourns*, were relied on by the examiner in refusing appellant a registration. They are: (1) that the configuration must be "intended primarily to indicate origin of the goods" and (2) "that the ordinary purchaser would be likely to consider that it indicated such origin." Initially, the examiner refused registration because of the "absence of evidence" on either of these points, saying that in the absence of such evidence an overall configuration will be "presumed" not to be a "mark." We assume that he had reference, in that reference to "mark," to the statement in section 23 of what marks are intended to be included in the section as subject to registration thereunder. Section 23, of course, does not require that the subject matter to be registered thereunder be a "trademark," as is required for registration on the Principal Register.[2]

◼◼ To sum up the statutory law applicable to this case, since this application is to register on the Supplemental Register, the overall configuration of appellant's goods need not be a trademark but only a "mark capable of distinguishing applicant's goods" from the goods

of others, in other words a mark which *might* be a trademark registrable on the Principal Register, upon proof of *established* secondary meaning. Applicable in addition to the statutory considerations are those policy considerations, which could prevent registration on the Principal Register, considered in our opinion in In re Deister Concentrator Co., 289 F.2d 496, 48 CCPA 952, which apply equally to registration on both registers.

◼ We turn now to the specific facts and issues before us. The goods here involved consist of a promoter-chemical in solid form used in a process of nonelectrolytic metal plating. The metal articles to be plated are tumbled in a rubber-lined barrel with plating metal in the form of powder or dust, glass particles, and the promoter-chemical which causes the plating metal to "migrate" to the surfaces to be plated and welded thereto.

The application [3] now contains the following amended description of goods:

"Chemical composition in solid form for use in a mechanical, nonelectrolytic system adapted to plate metal parts, said system being to tumble said parts in a tumbling barrel with powdered metal, small spherical particles (e. g., glass beads) and said chemical composition, the tumbling action causing the powdered metal to form into a dense, continuous, adherent coating on said metal parts."

The mark sought to be registered is the overall configuration of the promoter-chemical of undisclosed size having a shape only partially disclosed in the application. The application as filed contained a drawing (objected to as not showing the shape in three dimensions) and a photograph of a cake of chemical

2. Section 2, pertaining to the Principal Register, opens with the words, "No trade-mark by which the goods of the applicant may be distinguished from the goods of others * * *" whereas section 23 relates to "All marks capable of distinguishing applicant's goods * * *"

and then contains a paragraph enumerating certain things comprised within the term "mark." (15 U.S.C. §§ 1052 and 1091 respectively.) See Vandenberg, Trade-mark Law and Procedure, § 121 (b) at p. 10.

3. Serial No. 72,342, filed April 27, 1959.

showing one face only, head on. Subsequently a photograph in perspective was filed but while it shows one edge and the thickness, it still shows only one face, the other side being as much an unknown to us as the other side of the moon in pre-sputnik days. During prosecution of the application, the Patent Office draftsman was requested to make a new drawing from the photograph and did so but it is not a very accurate representation of what the photograph shows. We reproduce it here to give a general idea of the configuration.

Request to cancel the original figure and enter the new figure in its place was deferred by the examiner "until the mark is found to be registrable."

Since the mark is the *overall* configuration of the goods,[4] we deem the proposed drawing and photographs on file inadequate in that they do not disclose the *overall* configuration, but we have enough knowledge to decide the case. As shown, the goods are formed into triangular cakes which, so far as the record discloses, could be the size of a pill, a bar of soap, or a cement block. The visible face has a flat narrow border contiguous to the peripheral edges which are flat and smooth. Within the border is a raised portion with an ogee or reversed curve margin which blends with the border, not well illustrated in the drawing. What the shape of the other side of this object is we have no idea. It might be a duplicate of the visible face or it might be any other form imaginable which would not show up in the illustration. For the purpose of decision, we will make the assumption it is either a duplicate of the visible face or flat.

After being rejected because of lack of evidence to meet the Bourns case conditions, appellant submitted an affidavit of an employee familiar with the adoption of the configuration saying,

" * * * the reason for choosing the triangular three-dimensional shape for these goods was that this particular shape would be distinctive of the origin of those goods from Minnesota Mining and Manufacturing Company; that said triangular shape of said goods was, at the time at which it was adopted, and is, at the present time, intended primarily to indicate the origin of the goods described in the above-captioned application to register this configuration of goods as a trade-mark; deponent further states, as a matter of information and belief, that the ordinary purchasers of these goods would be likely to consider that the configuration of these goods does in-

4. There is an amendment of March 30, 1961, which adds to the application the following statement: "The mark comprises the triangular three-dimensional configuration of the goods." This makes it clear that it is the overall configuration appellant regards as its mark. The word "comprises," however, seems inappropriate. As we see it, the mark *consists* of the shape, all of it and nothing more.

dicate their origin, and that, in fact, the purchasers of those goods do consider the triangular shape of those goods as an indication of the origin of those goods."

We deem that evidence sufficient to establish, prima facie, what the intent of the appellant was and the Patent Office has produced nothing at all to rebut it. The assertion is entirely consistent with the record. We therefore consider that the first condition stated in Bourns, that the *configuration* was intended *primarily* to indicate origin, is established. Bearing on the value of the affidavit as evidence is a further fact stated therein, and not questioned, that

" * * * though it is functionally advantageous to form the ingredients of that bar into a *solid* shape, the ingredients are such that *they could be formed into almost any shape.*" [Emphasis added.]

In other words, so far as the record shows, the *shape* adopted is entirely arbitrary and, except for its solidity (*all* shapes being solid), has no functional significance whatever.

█ We come then to the second Bourns condition, supra, whether an ordinary purchaser of *these goods* would be *likely* to deduce origin from their shape. We think that what was said in Bourns on this point requires a little further thought in view of the language of section 23, which refers not to what a mark *does* or would be likely to do to a purchaser but what it is *capable* of doing. When we talk about what a purchaser "would be likely to consider" we must take into account what conditioning the owner of the mark might bring to bear on that purchaser through promotion of its mark as an indication of origin. Section 23 does not speak in terms of a fait accompli but only in terms of capa-

bility. We think the capacity to indicate origin is clearly there. Besides, there is some supporting evidence in the affidavit, no matter how far we may discount it, not only in the opinion of the affiant that the shape indicates origin but in his statement that in fact purchasers do consider it an indication of origin. As heretofore indicated, section 23 does not require even this much evidence since it requires only a capability.

There is no indication of record, nor do we think of any, that this is a shape found in nature, or used by any other for any purpose, or dictated by any consideration whatsoever other than a desire to devise an arbitrary shape to indicate origin and distinguish appellant's goods. Nor is there any indication that it was adopted primarily to be ornamental, or to make the goods easier to pack or to use or to make, or even more saleable. We deem it to be entirely arbitrary until the contrary be shown. As we said in concluding our opinion in In re Deister Concentrator Co., 289 F.2d 496, 48 CCPA 952, 968,

"Where a shape or feature of construction is in its concept arbitrary, it may be or become a legally recognizable trademark because there is no public interest to be protected."

For the reasons stated, we see no obstacle to the registration of the overall configuration of appellant's promoter-chemical on the Supplemental Register. However, that configuration must be clearly shown in the registration. We therefore *reverse* and *remand* the case so that the illustration of the mark may be amplified in accordance with this opinion.

Reversed and remanded.

WORLEY, C. J., did not participate in the decision of this case.