## In re BUSH BROTHERS & COMPANY.

### No. 89–1071.

United States Court of Appeals, Federal Circuit.

Sept. 1, 1989.

Edward G. Fenwick, Mason, Fenwick & Lawrence, Washington, D.C., submitted for appellant. With him on the brief was Brian D. Anderson.

Albin F. Drost, Associate Sol., Office of the Sol., of Arlington, Va., submitted for appellee. With him on the brief was Fred E. McKelvey, Sol.

Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and BISSELL, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Bush Brothers appeals the decision of the Trademark Trial and Appeal Board affirming the examining attorney's refusal to register the term DELUXE on the Supplemental Register as a trademark for canned pork and beans.[1] We reverse.

### The Supplemental Register

Bush Brothers initially applied for registration on the Principal Register. The examining attorney refused registration, and suggested that the applicant seek registration on the Supplemental Register. The applicant did so, and after various proceedings registration on the Supplemental Register was refused by the examiner and affirmed by the Board. The Board held that DELUXE was neither distinctive nor capable of becoming distinctive of the source of appellant's goods, and thus was incapable of serving as a trademark.

■■■ A mark that does not meet all the requirements for registration on the Principal Register, but that is "capable of distinguishing the applicant's goods or services," 15 U.S.C. § 1091, may be registered on the Supplemental Register. The test is not whether the mark is already distinctive of the applicant's goods, but whether it is capable of becoming so. *In re Simmons Co.*, 278 F.2d 517, 519, 47 CCPA 963, 126 USPQ 52, 53 (1960). Thus a mark that is ineligible for registration on the Principal Register because it is "merely descriptive" of the goods or services, 15 U.S.C. § 1052(e), may be registered on the Supplemental Register. *In re Wella Corp.*, 565 F.2d 143, 144, 196 USPQ 7, 8 (CCPA 1977) (stating that "descriptiveness alone does not necessarily preclude registration on the Supplemental Register. 15 U.S.C. § 1091.")

If the mark later acquires distinctiveness through use in commerce, 15 U.S.C. §§ 1052(f) (five years of substantially exclusive and continuous use as a mark may be deemed *prima facie* evidence of secondary meaning), the mark becomes eligible for registration on the Principal Register. *See* 15 U.S.C. § 1095. However, at the time of application for registration on the Supplemental Register the future is unknown, for it depends on such factors as the applicant's ensuing advertising and marketing efforts and their effect on the public. The Court of Customs and Patent Appeals discussed this point in *In re Minnesota Mining and Mfg. Co.*, 335 F.2d 836, 840, 51 CCPA 1546, 142 USPQ 366, 369 (1964):

> [S]ection 23 [of the Lanham Act] refers not to what a mark *does* or would be likely to do to a purchaser but what it is *capable* of doing. When we talk about what a purchaser "would be likely to consider" we must take into account what conditioning the owner of the mark might bring to bear on that purchaser through promotion of its mark as an indicator of origin. Section 23 does not speak in terms of a fait accompli but only in terms of capability. [Emphases in original].

Judicial focus on the Supplemental Register has been sparse, perhaps because of the ease of registration thereon, coupled with the general policy favoring registration as a matter of public information and for other benefits.[2] Eligibility for registration on the Supplemental Register, 15 U.S.C. § 1091, requires that the term does not meet the requirements of registration on the Principal Register but is deemed capable of achieving an association with the source of the product. For example, in *In re Helena Rubinstein, Inc.*, 410 F.2d 438, 442, 56 CCPA 1110, 161 USPQ 606, 608 (1969), the court held that the term "pasteurized" for face cream, despite long use by the applicant, simply describes pasteur-

1. *In re Bush Brothers & Co.*, Serial No. 499,982 (TTAB Sept. 15, 1988).

2. Registration on the Supplemental Register is not evidence of ownership, validity, or the exclusive right to use, and may not be used to stop importations; but *inter alia* enables the registrant to satisfy registration requirements under the trademark laws of foreign countries, enables the registrant to sue for infringement in federal court, and provides useful business information on a readily accessible, central register. *See generally* J.T. McCarthy, *Trademarks and Unfair Competition*, § 19.8, at 886–88 (2d ed.1984).

ized face cream and is incapable, *de jure*, of distinguishing the source of the goods.

## Analysis

The Commissioner states that whether the term DELUXE is capable of becoming distinctive of canned pork and beans is a question of fact, and that the Board's decision must be affirmed absent clear error. The Commissioner reasons by analogy to similar issues in trademark causes, citing *In re Advertising & Marketing Dev., Inc.*, 821 F.2d 614, 621, 2 USPQ2d 2010, 2015 (Fed.Cir.1987) (whether the mark identifies a particular type of service is a question of fact); *In re Northland Aluminum Products*, 777 F.2d 1556, 1559, 227 USPQ 961, 963 (Fed.Cir.1985) (whether a term is the common name of a product is a question of fact); and *Marcalus Mfg. Co. v. Watson*, 258 F.2d 151, 152, 118 USPQ 7, 7 (D.C.Cir. 1958) (whether a shape is viewed by the public as distinguishing the applicant's goods is a question of fact). The common thread to these issues is their dependence on so-called historical or evidentiary fact-probing inquiries, such as how the mark has been used or how the term is defined in a dictionary. On the basis of these basic factual inquiries the ultimate factual question is decided. *See* Brown, *Fact and Law in Judicial Review*, 56 Harv.L.Rev. 899, 902 (1943):

> In most controversies there are two types of fact questions involved—questions as to evidentiary facts and questions as to ultimate facts. The first involve the "raw elements" of the case, usually what the witnesses observed by their physical senses—what they saw, heard, and the like. The second have to do with the conclusions to be drawn from the evidentiary facts.

Ultimate fact is occasionally equated with mixed questions of fact and law, for the same question often has factual and legal attributes, *viz.* the question of whether a term has the capability of serving as a trademark. *See* Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis*, 58 Harv.L.Rev. 70, 93 (1944). Such choice of designation is generally considered to be without effect on the standard of judicial review:

> Ultimate facts going to the merits are usually reviewed narrowly and deferentially like questions of historical fact even when the underlying historical facts are not in dispute. Indeed, with [a few exceptions], mixed questions going to the merits are almost presumptively classified as questions of fact.

Louis, *Allocating Adjudicative Decision Making Authority between the Trial and Appellate Levels: A Unified View of the Scope of Review, The Judge/Jury Question, and Procedural Discretion*, 64 N.C. L.Rev. 993, 1003–04 (1986).

■ Thus it is apt to treat the question of whether a term is capable of distinguishing an applicant's goods or services as one of ultimate fact based on historical or evidentiary fact, and to review the Board's decision for clear error.[3] *See Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1578–79, 222 USPQ 665, 666–67 (Fed.Cir.1984) (factual findings of the Board reviewed on the clearly erroneous standard). In the case at bar the historical facts are not in dispute, but their significance in resolving the ultimate fact of trademark capability is challenged by the applicant, as is that finding itself.

The examining attorney cited references showing "deluxe" used with a wide range of products, generally to show or suggest a superior version of the product (*e.g.*, a deluxe hamburger). On this evidence the Board found that DELUXE is a "laudato-

---

3. The concurring opinion expresses the view that the question of whether a term has the capability of serving as a trademark is a question of policy. In accordance with the separation of powers it is the duty of Congress to make policy by law, that of the executive to execute the laws, and of the judiciary to interpret and apply them. Whether certain types of mark are registrable at all is indeed a question of policy, and such policy is embodied in the trademark statute; *e.g.*, the exclusion from registration of scandalous matter, 15 U.S.C. § 1052(a), or the authorization of registration of certification marks, 15 U.S.C. § 1054. But whether a particular term has the capability of acquiring secondary meaning is no more a question of policy than is any other determination based on specific facts.

ry" term that conveys a "general descriptive sense" of appellant's canned pork and beans, which contains bacon and brown sugar.

■ Appellant does not dispute that "deluxe" is a generally laudatory term. However, laudation is not inimical to a term's capability of functioning as a trademark. Appellant points to an assortment of generally laudatory terms that serve as trademarks, *e.g.*, *In re Ralston Purina Co.*, 191 USPQ 237, 238 (TTAB 1976) (authorizing registration of RALSTON SUPER SLUSH on the Principal Register because SUPER is used "merely to connote a vaguely desirable characteristic or quality allegedly connected with the product", not to describe any real characteristic or quality); *In re American Cyanamid Co.*, 176 USPQ 350 (TTAB 1973) (authorizing registration of THE PREMIUM GRADE MALATHION on the Supplemental Register, the Board stating: "There is no question but that the [term] is a laudatory, if not a descriptive designation" but is not a specific grade of malathion and thus is *prima facie* capable of functioning as a trademark); *In re Occidental Petroleum Corp.*, 167 USPQ 128 (TTAB 1970) (authorizing registration on the Principal Register of SUPER IRON for soil supplements, reversing the examiner's holding that "super" merely describes a quality of the goods). Applying similar reasoning to specific facts, registration of laudatory terms has been refused; for example *In re Duvernoy & Sons, Inc.*, 212 F.2d 202, 204, 41 CCPA 856, 101 USPQ 288, 289 (1954) (refusing registration on the Principal Register of "Consistently Superior" because distinctiveness under Section 2(f) not proved, the court also observing that the term is a laudatory statement of fact and is incapable of distinguishing the appellant's goods).

■ The Court of Customs and Patent Appeals has described "deluxe" as "obviously suggestive" and "descriptive", and used "in a great variety of trademarks and trade names." *Lever Bros. Co. v. Thrift–D–Lux Cleaners, Inc.*, 263 F.2d 842, 843, 46 CCPA 798, 120 USPQ 527, 528 (1959) (upholding registration of the mark THRIFT–D–LUX). The capability of DELUXE to function as a trademark is further illustrated in registrations of the term for various food products: DELUXE CHOICE for pasteurized processed cheese, on the Principal Register; CREAMY DELUXE for frostings, with disclaimer of "creamy", on the Principal Register; and DELUXE for fruit-cake, a 1913 registration. The Board does not assert that DELUXE is a common descriptive name for canned pork and beans with bacon and brown sugar.

The Board has not argued that DELUXE identifies a recognized grade of canned pork and beans, by analogy to *American Cyanamid, supra*, or that it signifies anything other than a "vaguely desirable characteristic", *Ralston Purina, supra*. Applying the reasoning of precedent to the facts of this case, we discern clear error in the Board's conclusion that DELUXE is incapable of serving as a trademark for canned pork and beans.

The refusal of registration on the Supplemental Register is

REVERSED.

BISSELL, Circuit Judge, concurring.

I concur in the majority's reversal of the refusal to register DELUXE on the supplemental register. I do not agree, however, that the determination of registrability on the supplemental register is a question of fact reviewed under the clearly erroneous standard.

"All marks capable of distinguishing [an] applicant's goods ... may be registered on the supplemental register." 15 U.S.C. § 1091 (1982); *In re Minnesota Mining & Mfg.*, 335 F.2d 836, 838, 51 CCPA 1546, 142 USPQ 366, 368 (1964). "The test is not whether the mark, when registration is sought, is actually recognized by the average purchaser, or is distinctive of the applicant's goods in commerce, but whether it is *capable* of *becoming* so." *In re Simmons Co.*, 278 F.2d 517, 519, 47 CCPA 963, 126 USPQ 52, 53 (1960) (emphasis in original). The decision whether a mark has this requisite "capability" is a policy determination

that should be reviewable as a matter of law. *Cf. Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870, 228 USPQ 90, 96 (Fed. Cir.1985) (applying "two policy oriented limitations" on the patent law doctrine of equivalents "as questions of law").

In *In re Deister Concentrator Co.,* 289 F.2d 496, 504, 48 CCPA 952, 129 USPQ 314, 322 (1961), the Court of Customs and Patent Appeals recognized that the "true basis [for holding that marks could never acquire secondary meaning] is not that they cannot or do not indicate source to the purchasing public but that there is an overriding public policy of preventing their monopolization, of preserving the public right to copy." *See also Minnesota Mining,* 335 F.2d at 838, 51 CCPA 1546, 142 USPQ at 369–70 (requiring that the policy considerations outlined in *Deister* be examined when deciding whether to allow registration on the supplemental register). In reality, a determination refusing registration on the supplemental register means that no amount of public recognition can ever make the mark registrable on the principal register. *Cf. Deister,* 289 F.2d at 505–06, 48 CCPA 952, 129 USPQ at 323 (rejecting the need to consider advertising "gimmicks" designed to acquaint the public with a mark that is incapable of acquiring secondary meaning). That determination must be freely reviewable on appeal because it involves policy considerations and not questions of witness credibility, physical evidence or documentary evidence. *Cf. Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985) (applying the clearly erroneous standard of review to factual findings based on credibility determinations, physical evidence and documentary evidence).