# United States Court of Appeals for the Federal Circuit

---

**REAL FOODS PTY LTD.,**
*Appellant*

**v.**

**FRITO-LAY NORTH AMERICA, INC.,**
*Cross-Appellant*

---

2017-1959, 2017-2009

---

Appeals from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91212680, 91213587.

---

SEALED OPINION ISSUED: September 21, 2018
PUBLIC OPINION ISSUED: October 4, 2018*

---

JEANNE M. HAMBURG, Norris, McLaughlin & Marcus, PA, New York, NY, argued for appellant. Also represented by STEPHANIE SPANGLER; KELLY WATKINS, Allentown, PA.

WILLIAM G. BARBER, Pirkey Barber LLP, Austin, TX,

---

\* This opinion was originally filed under seal and has been unsealed in full.

argued for cross-appellant. Also represented by TYSON DAVID SMITH, DAVID ARMENDARIZ.

———————————

Before WALLACH, LINN, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Real Foods Pty Ltd. ("Real Foods") sought registration of two marks: "CORN THINS," for "crisp-bread slices predominantly of corn, namely popped corn cakes"; and "RICE THINS," for "crispbread slices primarily made of rice, namely rice cakes." J.A. 279 (emphasis omitted). Cross-Appellant Frito-Lay North America, Inc. ("Frito-Lay") opposed the registrations, arguing that the proposed marks should be refused as either generic or descriptive without having acquired distinctiveness. *See* J.A. 241–43 (opposition to RICE THINS), 254–56 (opposition to CORN THINS). The U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") refused registration of Real Foods' applied-for marks in an opinion finding the marks "are merely descriptive and have not acquired distinctiveness," *Frito-Lay N. Am., Inc. v. Real Foods Pty Ltd.*, Nos. 91212680, 91213587, 2017 WL 914086, at *21 (T.T.A.B. Feb. 21, 2017), but also dismissing Frito-Lay's "genericness claim," *id.* at *14.

Both parties appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B) (2012). We affirm-in-part, vacate-in-part, and remand.

## DISCUSSION

Real Foods argues the TTAB erred in finding the proposed marks "descriptive, rather than suggestive, . . . because it applied incorrect legal standards in evaluating the marks and failed to properly consider all of the evidence of record." Appellant's Br. 20; *see id.* at 21–35. Alternatively, Real Foods contends that, even if its

marks are descriptive, "[they] have acquired [distinctiveness]." *Id.* at 41 (capitalization modified); *see id.* at 41–61. Frito-Lay cross-appeals the TTAB's dismissal of its claim that the proposed marks are generic. Cross-Appellant's Br. 15–22. After articulating the governing legal principles, we address Real Foods' appeal and then Frito-Lay's cross-appeal.

## I. Standard of Review and Legal Framework

We review the TTAB's legal conclusions de novo and its findings of fact for substantial evidence. *In re N.C. Lottery*, 866 F.3d 1363, 1366 (Fed. Cir. 2017). "Substantial evidence requires more than a mere scintilla and is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 964 (Fed. Cir. 2015) (internal quotation marks and citation omitted). "The [TTAB]'s finding[s] may be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349 (Fed. Cir. 2011) (citation omitted).

"[T]here are four categories of [terms] that lie along a spectrum" used to categorize proposed marks. *In re N.C. Lottery*, 866 F.3d at 1366 (citation omitted). "When arranged in an ascending order which roughly reflects their eligibility for trademark status and the degree of protection accorded, these four categories are: generic (or common descriptive), merely descriptive, suggestive, and arbitrary []or fanciful[] marks." *Id.* (internal quotation marks and citations omitted). "Placement of a term on the fanciful-suggestive-descriptive-generic continuum is a question of fact." *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012) (quoting *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001)).

Generic terms "cannot be registered as trademarks." *Princeton Vanguard*, 786 F.3d at 965 (citation omitted). "A generic term is the common descriptive name of a class of goods or services" and "[is] by definition incapable of indicating a particular source of the goods or services." *Id.* (internal quotation marks and citations omitted); *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[G]eneric marks . . . refer to the genus of which the particular product is a species." (internal quotation marks, brackets, and citation omitted)).

Terms "that are merely descriptive cannot be registered [on the principal register[1]] unless they acquire" distinctiveness, which is "secondary meaning[,] under [15 U.S.C. § 1052(f)[2]]." *In re N.C. Lottery*, 866 F.3d at 1366 (citation omitted); *see* 15 U.S.C. § 1052(f) (similar); *see also Two Pesos*, 505 U.S. at 769 ("This acquired distinctiveness is generally called 'secondary meaning.'").   "A

---

[1]   The Lanham Act, *see* 15 U.S.C. §§ 1051–1072, 1091–1096, 1111–1129, 1141–1141n (2012), contains provisions related to the principal register, *see id.* §§ 1051–1072, which is the primary register for trademarks on which the USPTO maintains registered marks "by which the goods of the applicant may be distinguished from the goods of others," *id.* § 1052. "A certificate of registration of a mark upon the principal register" is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the certificate." *Id.* § 1057(b).

[2]   Section 1052(f) provides that "nothing in this chapter shall prevent the registration of a mark . . . which has *become distinctive of the applicant's goods* in commerce." 15 U.S.C. § 1052(f) (emphasis added).

mark is merely descriptive if it immediately conveys information concerning a feature, quality, or characteristic of the goods or services for which registration is sought." *In re N.C. Lottery*, 866 F.3d at 1367 (citation omitted). "The 'descriptive' category is not a monolithic set of terms. Some terms are only *slightly* descriptive and . . . [o]ther terms are *highly* descriptive . . . ." 2 J. McCarthy, Trademarks and Unfair Competition § 11:25 (5th ed. 2018) (emphases added). Secondary meaning, required to register a descriptive mark, "occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (internal quotation marks, brackets, and citation omitted). "[T]he applicant's burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning." *In re Steelbuilding.com*, 415 F.3d 1293, 1300 (Fed. Cir. 2005) (citation omitted).[3]

---

[3]    The Lanham Act also provides for registration on the supplemental register. *See* 15 U.S.C. §§ 1091–1096; *see also In re Bush Bros. & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989) (citations omitted) ("[A] mark that is ineligible for registration on the [p]rincipal [r]egister because it is 'merely descriptive' of the goods or services, may be registered on the [s]upplemental [r]egister."). "A mark may be registered on the supplemental register if it is *capable of distinguishing* the applicant's goods or services," even though it has not yet acquired distinctiveness. *In re Am. Fertility Soc'y*, 188 F.3d 1341, 1343 (Fed. Cir. 1999) (emphasis added); *see* 15 U.S.C. § 1091. By contrast, a mark that is generic cannot be registered on the supplemental register because it is "the ultimate in descriptiveness" and therefore "cannot acquire distinctiveness." *Royal Crown*

Terms that are suggestive, arbitrary, or fanciful are "inherently distinctive" and therefore registrable. *Wal-Mart*, 529 U.S. at 210–11; *see In re Chippendales USA, Inc.*, 622 F.3d 1346, 1350–51 (Fed. Cir. 2010) (discussing registrability of these terms). "[A] suggestive mark requires imagination, thought[,] and perception to reach a conclusion about the nature of the goods." *In re N.C. Lottery*, 866 F.3d at 1367 (internal quotation marks and citation omitted). Arbitrary or fanciful marks "contain coined, arbitrary or fanciful words or phrases that have been added to rather than withdrawn from the human vocabulary by their owners, and have, from the very beginning, been associated in the public mind with a particular product," and these marks "have created in the public consciousness an impression or symbol of the excellence of the particular product in question." *In re Chippendales*, 622 F.3d at 1350 n.2 (internal quotation marks omitted) (quoting *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 429 n.10 (2003)).

"In opposition proceedings, the opposer bears the burden of establishing that the applicant does not have the right to register its mark." *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 1360 (Fed. Cir. 2001). Here, the opposer, Frito-Lay, bears the burden of proving that the term is generic or merely descriptive by a preponderance of the evidence. *See Princeton Vanguard*, 786 F.3d at 965

---

*Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1366 (Fed. Cir. 2018) (internal quotation marks and citation omitted). Registration on the supplemental register "confers considerably fewer advantages than principal registration," *In re Am. Fertility Soc'y*, 188 F.3d at 1343, with supplemental registration providing "no substantive trademark rights beyond those under common law," *id.* (quoting J. McCarthy, McCarthy on Trademarks and Unfair Competition § 19:36 (4th ed. 1999)).

(generic); *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1332 (Fed. Cir. 2014) (merely descriptive). However, for acquired distinctiveness, which "serves as an exception to a rejection," *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1580 (Fed. Cir. 1988), the applicant, Real Foods, has the "final burden . . . of going forward with evidence to . . . establish acquired distinctiveness by at least a preponderance of the evidence," *id.* at 1579 (internal quotation marks omitted).

## II. Real Foods' Appeal

### A. Substantial Evidence Supports the TTAB's Descriptiveness Finding

The TTAB determined that both the terms CORN THINS and RICE THINS "are merely descriptive of a feature of [Real Foods'] respective goods," *Frito-Lay*, 2017 WL 914086, at *17, and found the marks "highly descriptive," *id.* at *20. According to the TTAB, "a consumer will immediately understand, when encountering the proposed marks, that a feature or characteristic of [Real Foods'] goods is that they are thin in cross section and made primarily of corn in one instance and rice in the other." *Id.* at *15. The TTAB further explained that "because each component of the [proposed marks] retains its merely descriptive significance in relation to the claimed goods, each combination results in a composite that is itself merely descriptive." *Id.* at *17. Real Foods avers the proposed marks are suggestive, rather than descriptive, because they "require[] some imagination for the consumer to reach a conclusion about the nature of the product," and the TTAB failed to "examine the marks in their entireties or in the context of the relevant product category." Appellant's Br. 23 (capitalization modified); *see id.* at 23–27. We disagree with Real Foods.

"When determining whether a mark is merely descriptive, the [TTAB] must consider the *commercial impression* of a mark as a whole," "viewed through the

eyes of a consumer." *DuoProSS*, 695 F.3d at 1252, 1253 (emphasis added) (citation omitted). The TTAB should "consider the mark in relation to the goods for which it is registered," asking "whether someone who knows what the goods and services are will understand the mark to convey information about them." *Id.* at 1254 (internal quotation marks and citation omitted). "Evidence of the public's understanding of the term may be obtained from any competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers[,] and other publications." *Royal Crown*, 892 F.3d at 1366 (internal quotation marks and citation omitted). In considering the mark as a whole, the TTAB "may not 'dissect' the mark into isolated elements," without ever "consider[ing] . . . the entire mark," *DuoProSS*, 695 F.3d at 1252, 1253, but it "may weigh the individual components of the mark to determine the overall impression or the descriptiveness of the mark and its various components," *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1174 (Fed. Cir. 2004) (citation omitted).

Substantial evidence supports the TTAB's finding that the proposed marks are highly descriptive. The terms "corn" and "rice," both of which are grains, *see Frito-Lay*, 2017 WL 914086, at *12 & nn.77–78 (taking judicial notice of dictionary definitions of each term),[4] describe the primary ingredient in Real Foods' respective goods, *see* J.A. 471 (stating, in the declaration of Real Foods' managing director, "Real Foods' products are manufactured by placing rice or corn grains into a mold, to which heat and pressure is applied, resulting in the popping of the corn and puffing of the rice and their formation into cakes"); *see also* J.A. 559 (providing, in

---

[4]  The parties do not contest the TTAB's noticing of these definitions. *See generally* Appellant's Br.; Cross-Appellant's Br.

online marketing materials, that maize (i.e., corn) is the primary ingredient by percentage in CORN THINS), 571 (providing, in similar marketing materials, that rice is the primary ingredient in RICE THINS).  Before the TTAB, Real Foods disclaimed the terms "corn" and "rice" in its proposed marks, *see* J.A. 156 ("No claim is made to the exclusive right to use CORN apart from the mark as shown."), 210 ("No claim is made to the exclusive right to use RICE apart from the mark as shown."), thereby recognizing the descriptive function of these terms, *see In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015) ("Disclaiming unregistrable components prevents the applicant from asserting exclusive rights in the disclaimed unregistrable terms.").  Indeed, the terms corn and rice in Real Foods' proposed marks are descriptive because they identify "ingredients," which are "qualities or properties" of Real Foods' goods.  *In re Gyulay*, 820 F.2d 1216, 1218 (Fed. Cir. 1987) (internal quotation marks and citation omitted).

Moreover, the term thins describes physical characteristics of the corn and rice cakes.  *See* J.A. 469 (stating, in the declaration of Real Foods' Managing Director, that the "corn cakes are considerably *slimmer* than traditional cakes, with slices under 0.8 centimeters in depth, as compared to the usual 1.6 centimeters" (emphasis added)), 474 (stating, in the same declaration, that both CORN THINS and RICE THINS have "slim dimensions").  Indeed, Real Foods' advertising materials use the word "thin" to describe their products.  *See, e.g.*, J.A. 5097 ("They are a delicious *thin* corn cake, with 'All Natural' flavoring." (emphasis added)), 5181 (describing the product as having "THIN slices not thick"), 5188 (stating "Corn & Rice Thins are THIN").  The record is replete with evidence of the term thins being used in marks for other, similar snack food products, *see, e.g.*, J.A. 4076–78 (identifying, in Frito-Lay's expert report, 119 products using the term thins, including "Back to Nature Tomato

Herb Rice Thins," "Baked Potato Thins," "FalaFel Thins," "Pita Thins," and "Wheat Thins"), which is evidence relevant to the issue of the term's descriptiveness, *cf. Royal Crown*, 892 F.3d at 1370 (recognizing that indirect evidence, including of "competitive use, evidence that other companies use [a term] in combination with their own . . . marks, third-party registrations[,] and applications for such combined marks," may be relevant for genericness). Thus, the proposed marks' disclosure of this thin "characteristic" or "feature" of the goods is descriptive. *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 1300 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

Viewing the marks as composites "do[es] not create a different impression." *In re Oppedahl*, 373 F.3d at 1177.[5] The composite marks are "merely descriptive" because they "immediately convey[] knowledge of a quality or characteristic of the product[s]," specifically the products' main ingredients and thickness. *Id.* at 1173 (citation omitted). Contrary to Real Foods' argument, it is not determinative that the marks do not also make reference to the products being "cakes" or being made with "popped or puffed ingredients." Appellant's Br. 16, 17; *see In re Oppedahl*, 373 F.3d at 1173 ("A mark may be merely descriptive even if it does not describe *the full scope and extent* of the applicant's goods or services." (emphasis

---

[5] The TTAB did not merely consider the two individual terms in each of the marks without considering the marks as a whole, as Real Foods contends. *See* Appellant's Br. 25–26. Instead, the TTAB first weighed the individual components of the marks, then explicitly discussed the marks as a whole, and concluded that even the composite marks are descriptive, *see Frito-Lay*, 2017 WL 914086, at *17, as it is permitted to do, *see In re Oppedahl*, 373 F.3d at 1174–75.

added) (internal quotation marks and citation omitted)).[6] Not only does the record reveal that Real Foods has deployed the proposed marks as generic descriptors, *see, e.g.*, J.A. 5309 (referring, in Real Foods' advertising material, to the product as "Delicious Golden Corn Thins With Real Flavoring," with the term "Corn Thins" stylized the same as the rest of the phrase), 5319 (same), but purchasers of Real Foods' products have also used these terms to describe Real Foods' products, rather than as source identifiers for the products, which amounts to direct evidence of the "commercial impression" of the mark as a whole, *DuoProSS*, 695 F.3d at 1252; *see, e.g.*, J.A. 5288 (referring, by a potential customer, to "[Real Foods'] corn thins product"), 5318 (similar by an online distributor of Real Foods' product). Therefore, substantial evidence supports the TTAB's descriptiveness finding.

Real Foods' counterarguments do not convince us otherwise. First, Real Foods argues it provided evidence that its marks are suggestive "in the form of marketing and advertising materials that supported consumer under-

---

[6]    Real Foods identifies "alternative names that [it believes] are merely descriptive," such as "thin corn cakes," "slender corn cakes," and "slim corn cakes." Appellant's Br. 35 (internal quotation marks omitted). However, it is difficult to see how Real Foods' proposed marks are sufficiently different from these admittedly descriptive terms. To the extent Real Foods believes it is deploying the word "thin" in a unique way, i.e., turning that word into a noun by adding an "s," *see Frito-Lay*, 2017 WL 914086, at *15 (finding "there is no definition from a traditional dictionary for 'thins' as a noun"), such use does not change the term's descriptive function, *see* 2 McCarthy § 11:29 ("A mere *change of form* of a descriptive term will not automatically remove it from the descriptive category." (emphasis added)).

standing of the marks . . . as a double entendre," by conveying "the low calorie, light[,] and diet-friendly characteristics of the products." Appellant's Br. 27. Real Foods cites *In re Colonial Stores, Inc.*, *see id.*, in which our predecessor court held that an applicant's proposed mark "SUGAR & SPICE" was suggestive for "[b]akery products," including "cakes, cookies, breads, rolls, donuts, pastries, [and] crackers," 394 F.2d 549, 549 (CCPA 1968) (internal quotation marks omitted), even though they also "describe[d] goods containing sugar and spice," *id.* at 550. The court explained that the mark at issue creates an "unusual association" in the view of a consumer and evokes the "*immediate impression . . .* of sugar and spice with everything nice," *id.* at 552 (emphasis added) (internal quotation marks and footnote omitted), by referencing a well-known "nursery rhyme," *id.* at 553. Here, however, the TTAB rejected Real Foods' argument "in light of the evidence of use of 'thins' by other manufacturers on cookies, which are not known for having a low caloric content, and other snack foods such as pretzels, even chocolate-coated pretzels." *Frito-Lay*, 2017 WL 914086, at *17; *see id.* (stating it was "not persuade[d]" by Real Foods' evidence). We find substantial evidence supports the TTAB's finding of no additional suggestive meaning of the proposed marks because similar products, which are not typically low in calories or known for healthfulness, contain the same descriptive term of thins. *See, e.g.*, J.A. 1069 (providing "ANNA'S GINGER THINS" for gingerbread cookies), 2824 (providing a trademark application seeking registration of "BROWNIE THINS" for "dessert snacks . . . of cookies, cakes, donuts, brownies, or muffins"), 4051–52 (listing several types of pretzel thins in Frito-Lay's expert report), 5775 (depicting, inter alia, "barkTHINS," a flavor of which is described as "Dark Chocolate Pretzel Snacking Chocolate"). Therefore, it is reasonable to conclude that Real Foods' claimed additional meaning of healthfulness would not attach in the eyes of a consumer, *see Frito-Lay*, 2017 WL 914086, at *17,

such that substantial evidence supports the TTAB's conclusion, even if other evidence may reasonably allow one to infer a healthfulness-related meaning, *see Citigroup*, 637 F.3d at 1349 (explaining that substantial evidence may support a decision "even if two inconsistent conclusions can be drawn from the evidence").

Second, Real Foods contends the TTAB "improperly relied on Frito-Lay's third party evidence," contained in its expert report, "concerning the usage of 'THINS.'" Appellant's Br. 32 (capitalization modified). Specifically, Real Foods argues that Frito-Lay's expert report "did not consider the meaning . . . of [the proposed marks] *as a whole*" and only analyzed "crackers, chips, and other snack foods[, which are] different from popped corn and rice cakes." *Id.* (emphasis added). The TTAB reasonably relied on Frito-Lay's expert report, which concluded "[t]he word THINS when used for snack foods such as crackers, cookies, wafers, biscuits, crispbreads, crispbread slices, or crisps does not indicate the origin or source of the snack food item." J.A. 4010–11. There is no requirement that an expert report provide an opinion as to the marks as a whole for the TTAB to rely on it, and we decline to impose such a requirement. Instead, *the TTAB* is required to consider the mark "as a whole," *DuoProSS*, 695 F.3d at 1252, which it did, *see Frito-Lay*, 2017 WL 914086, at *17.

In addition, as we have observed, "[e]vidence of the public's understanding of [a] term may be obtained from *any* competent source." *Royal Crown*, 892 F.3d at 1366 (emphasis added) (internal quotation marks and citation omitted). Here, the parties waived "all objections to the admissibility of the evidence . . . , but without prejudice to [their] rights to rely on arguments concerning the probative value of such evidence," in order to take advantage of the TTAB's "Accelerated Case Resolution . . . procedure." *Frito-Lay*, 2017 WL 914086, at *2 (footnote omitted). Frito-Lay's expert report is relevant to the inquiry because Real Foods' own advertising material compares its

goods to snack foods, namely crackers. *See, e.g.*, J.A. 5185 (calling its corn thins product "a substitute for tortilla chips"), 5186 (referring to the same as "a real alternative to bread, crackers, rice cakes[,] or crispbreads"), 5195 (describing its product as a "healthy popped corn cake" that "taste[s] just like popcorn—in a *cracker*" (emphasis added)). Although Real Foods now attempts to undermine the relevance of this evidence by characterizing its proposed marks as limited to "popped corn and rice cakes," Appellant's Br. 32, each of Real Foods' applications identifies the goods as "crispbread slices," which are kinds of crackers, as discussed below, *see infra* Section III; *see also* J.A. 164 (citing evidence, by a USPTO examiner, that indicates corn cakes are a type of crispbread). Therefore, it was not improper for the TTAB to rely on the third party evidence contained in Frito-Lay's expert report.

Third, Real Foods argues the TTAB "failed to consider third party registrations of THINS." Appellant's Br. 33 (capitalization modified); *see id.* at 33–35. However, the TTAB's Opinion identified several trademark registrations that "incorporate the term 'thins,'" *Frito-Lay*, 2017 WL 914086, at *9–10; *see id.* at *9 (providing these marks in a section entitled "Registrations by Others"), and determined they "ha[ve] limited probative value" because "each application must be examined on its own merits," *id.* at *5 n.18 (internal quotation marks and citation omitted). The TTAB is correct that these prior registrations do not compel registration of Real Foods' proposed marks. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 600 (Fed. Cir. 2016) ("The [US]PTO is required to examine all trademark applications for compliance with each and every eligibility requirement, . . . even if the [US]PTO earlier mistakenly registered a similar or identical mark suffering the same defect."). Instead, as discussed, the TTAB properly considered the proposed marks in light of the record and adequately supported its finding that Real Foods' marks are highly descriptive.

### B. Substantial Evidence Supports the TTAB's Acquired Distinctiveness Finding

The TTAB found that Real Foods "has not demonstrated that its applied-for marks have acquired distinctiveness." *Frito-Lay*, 2017 WL 914086, at *20. The TTAB noted that (1) Real Foods "has done little or no advertising of CORN THINS or RICE THINS"; (2) Real Foods' "sales figures, while not insignificant, are not high"; (3) "the use of THINS is not limited to [Real Foods]"; and (4) a survey conducted by Frito-Lay's expert, which had "some probative value," established "limited recognition of CORN THINS as a mark." *Id.* Real Foods argues the TTAB erred because "its marks have acquired secondary meaning" and maintains the TTAB failed to properly consider the record evidence. Appellant's Br. 41 (capitalization modified). We disagree with Real Foods.

Acquired distinctiveness, i.e., "[s]econdary meaning," "is a term of art which denotes that there is an association formed in the minds of the consumers between the mark and the source or origin of the product." *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1201 (Fed. Cir. 1994) (internal quotation marks and citation omitted). "To determine whether a mark has acquired secondary meaning, courts consider:  advertising expenditures and sales success; length and exclusivity of use; unsolicited media coverage; copying of the mark . . . ; and consumer studies." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1379 (Fed. Cir. 2012) (citation omitted).

Substantial evidence supports the TTAB's finding that Real Foods' proposed, highly descriptive marks have not acquired distinctiveness. Real Foods' sales and advertising figures weigh against a finding of acquired distinctiveness. The record indicates that Real Foods has spent a relatively small amount on advertising as compared to other expenditures, J.A. 5469 (providing annual U.S. advertising figures relative to other expenditures); *see*

J.A. 5369 (acknowledging, by Real Foods' marketing manager, that Real Foods has a small advertising budget), and that its overall sales figures are not high, J.A. 5103 (discussing annual sales in the context of market needs); *see* J.A. 1191 (showing a recent *decrease* in overall sales numbers). Additionally, research conducted by a third party on behalf of Real Foods demonstrates that consumers have low brand loyalty to and low preference for Real Foods' corn and rice cakes, as compared to its competitors'. *See* J.A. 5137 (depicting a graph comparing consumer brand awareness for several companies producing similar products).

Moreover, Frito-Lay's expert survey established that only around ten percent of respondents associated CORN THINS with a particular company, *see* J.A. 4405 (stating "a net of 10.3% of respondents stated that they associated CORN THINS with only one company" and, when the pool of respondents was limited to "only purchasers and prospective purchasers of crispbreads/crispbread slices," that number increased to only "10.9% of the respondents"), and that about half of those respondents identified a company *other than* Real Foods, *see* J.A. 4412 ("42 of the 89 subjects who indicated 'only one company' . . . specified the name of a company other than Real Foods . . . ."). The TTAB gave this survey "some probative" weight. *Frito-Lay*, 2017 WL 914086, at \*20. Similar survey data has been held to demonstrate that a descriptive mark has not acquired distinctiveness. For example, in *Roselux Chemical Co. v. Parsons Ammonia Co.*, our predecessor court reversed a trademark registration, finding the mark descriptive and not having acquired distinctiveness, where the survey data demonstrated that only "10% of the people who actually know the [ammonia] product" called it by the name of the proposed mark. 299 F.2d 855, 862 (CCPA 1962). The court reasoned that one could not "assume therefrom that the primary significance of the [descriptive term] to purchasers of ammonia is as a desig-

nation of origin." *Id.*; *cf. Princeton Vanguard*, 786 F.3d at 969 (recognizing, for genericness, that direct consumer survey evidence is considered probative and generally "preferable to indirect forms of evidence" (internal quotation marks and citation omitted)). Therefore, taken together, this constitutes substantial evidence supporting the TTAB's finding.

Real Foods' counterarguments are unavailing. First, Real Foods avers that the TTAB's "erroneous determination that the marks were 'highly descriptive' rendered it impossible for Real Foods to establish secondary meaning." Appellant's Br. 36 (capitalization modified); *see id.* at 36–41. The TTAB did not place an inappropriately heavy burden on Real Foods. Our case law provides that "[w]here a mark sits on a sliding scale of descriptiveness impacts the burden a proposed registrant must bear with respect to its claim of acquired distinctiveness." *Royal Crown*, 892 F.3d at 1365; *see In re Steelbuilding.com*, 415 F.3d at 1301 (stating that, where a "proposed mark is highly descriptive," the "applicant had the burden to show a concomitantly high level of secondary meaning"). Rather than making it impossible for Real Foods to establish secondary meaning, the TTAB found the marks "highly descriptive," thereby properly placing a heavier burden on Real Foods to prove distinctiveness. *Frito-Lay*, 2017 WL 914086, at *20.

Second, Real Foods argues the TTAB "ignored" evidence of Real Foods' "substantially exclusive and continuous use of CORN THINS and RICE THINS over many years," which was "clear legal error" pursuant to § 1052(f). Appellant's Br. 42 (capitalization modified). However, § 1052(f) provides that "[t]he Director [of the USPTO] *may accept* as prima facie evidence that the mark has become distinctive . . . proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the [previous] five years." 15 U.S.C. § 1052(f) (emphasis added). Therefore, while evidence of substantially

exclusive and continuous use *may* be sufficient to prove a prima facie case of acquired distinctiveness, this is not always the case. *See In re La. Fish Fry*, 797 F.3d at 1337. "Particularly for a mark that is . . . highly descriptive like [Real Foods' proposed marks], the [TTAB] was within its discretion not to accept [Real Foods'] alleged five years of substantially exclusive and continuous use as prima facie evidence of acquired distinctiveness." *Id.* (italics omitted). Moreover, the TTAB did not simply ignore this evidence; it explicitly "acknowledged this evidence," as Real Foods admits. Appellant's Br. 42 (citing *Frito-Lay*, 2017 WL 914086, at *19 n.112).

Third, Real Foods contends the TTAB (1) ignored evidence of "Real Foods' sales and top market share position," *id.* at 43 (capitalization modified); *see id.* at 43–45, (2) "failed to properly weigh Real Foods' [evidence of its] marketing efforts," *id.* at 45 (capitalization modified); *see id.* at 45–54, and (3) "gave improper weight to Frito-Lay's flawed survey," *id.* at 55 (capitalization modified); *see id.* at 55–61.[7] The TTAB is entitled to weigh the evidence,

---

[7]       Many of Real Foods' arguments mischaracterize the TTAB's findings. For example, Real Foods contends the TTAB "erred when it found *no* probative value in Real Foods' expert [declaration]," Appellant's Br. 53 (emphasis added); however, the TTAB explicitly considered the expert report and evidence in question but found it had "*little* probative value on the question of acquired distinctiveness." *Frito-Lay*, 2017 WL 914086, at *18 (emphasis added). Real Foods also states the "[TTAB] inappropriately disregarded [certain] evidence by failing to consider social media and online engagement with consumers," Appellant's Br. 48; yet, the TTAB explicitly considered this evidence, *see, e.g.*, *Frito-Lay*, 2017 WL 914086, at *18 ("[Real Foods] has over 16,000 Facebook 'likes' and its

*see Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the evidence is the special province of the trier of fact."), and we reject Real Foods' invitation to disturb the TTAB's findings by reweighing the evidence. Furthermore, to the extent Real Foods believes the TTAB committed legal error by failing to consider its marks "in the context of the demand for the type of product and the size of the natural foods markets in which [Real Foods] competes," Appellant's Br. 44 (citations omitted), we find no merit in this position. Real Foods' "registration does not contain limitations describing a particular channel of trade or class of customer," so "[its] goods . . . are assumed to travel in all normal channels of trade." *Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1361 (Fed. Cir. 2000); *see* J.A. 53–208 (CORN THINS application), 209–26 (RICE THINS application). Thus, the TTAB properly determined that Real Foods' proposed marks have not acquired distinctiveness.

### III. Frito-Lay's Cross-Appeal

The TTAB dismissed Frito-Lay's claim that the proposed marks are generic. *Frito-Lay*, 2017 WL 914086, at *14. The TTAB identified the genus of the goods as "popped corn cakes" for the CORN THINS mark and "rice cakes" for the RICE THINS mark, and it further noted the "relevant public is the general consuming public who consume and eat the snack foods identified." *Id.* at *4. The TTAB then found Frito-Lay "failed to demonstrate by a preponderance of the evidence that CORN THINS and RICE THINS considered as a whole would be perceived by consumers as generic for, respectively, popped corn cakes and rice cakes." *Id.* at *13. On cross-appeal, Frito-Lay argues "[Real Foods'] marks are generic." Cross-

---

products have been featured on several blogs." (footnote omitted)).

Appellant's Br. 15 (capitalization modified); *see id.* at 15–22. Specifically, Frito-Lay contends the TTAB erred by finding "'thins' is not a generic term" "based solely on the fact that it is used within some third-party brand names" because "'thins' is commonly used as a generic term for snack food products, including crackers and crispbread slices." *Id.* at 22. We agree that the TTAB erred, but not for the reasons asserted by Frito-Lay.[8]

"[A] term can be generic for a genus of goods or services if the relevant public understands the term to refer

---

[8] We have "a special obligation" to satisfy ourselves of jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). "A party that is not adversely affected by a judgment lacks standing to" cross-appeal. *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1156 (Fed. Cir. 2004) (citing *Pub. Serv. Comm'n v. Brashear Freight Lines, Inc.*, 306 U.S. 204, 206 (1939)); *see Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1172 (Fed. Cir. 2017) (applying standing principles to appeals "from a final agency action"). Although the TTAB refused registration of Real Foods' proposed marks, Frito-Lay has standing to challenge the TTAB's finding of non-genericness because Frito-Lay is adversely affected by registrability on the supplemental register of a descriptive term that has not acquired secondary meaning and therefore may eventually become eligible for registration on the principal register, *In re Bush Bros.*, 884 F.2d at 570; *see* 15 U.S.C. §§ 1052(f), 1091(a), while a generic term cannot, *see Royal Crown*, 892 F.3d at 1366. Further, a mark seeking supplemental registration, unlike principal registration, "shall not be published for or be subject to opposition." 15 U.S.C. § 1092. *But see id.* (explaining further that a mark seeking registration on the supplemental register is still subject to cancellation proceedings).

to a *key aspect* of that genus." *Royal Crown*, 892 F.3d at 1367 (ellipsis, internal quotation marks, and citation omitted). Genericness involves a "two-step inquiry" that asks: (1) "what is the genus of goods or services at issue," and (2) "is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" *Princeton Vanguard*, 786 F.3d at 965 (internal quotation marks and citation omitted); *see id.* at 968 (explaining that the TTAB should consider "the record evidence of the public's understanding of the mark as a whole"). "The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application[,] regardless of what the record may reveal as to the particular nature of an applicant's goods . . . ." *In re Cordua*, 823 F.3d at 602 (internal quotation marks and citation omitted).

The TTAB improperly narrowed the genus of the goods at issue. The Applications initially identified the goods as "[c]rispbread slices predominantly of corn," J.A. 53, and "crispbread slices primarily made of rice," J.A. 209. During the opposition proceedings, Real Foods moved to amend the goods as "crispbread slices predominantly of corn, *namely popped corn cakes*" and "crispbread slices primarily made of rice, *namely rice cakes*," J.A. 279 (emphases added), and the TTAB granted Real Foods' motion to amend, *Frito-Lay*, 2017 WL 914086, at *21. In its Opinion, the TTAB defined the genus of the goods strictly by reference to the *newly added* portion of the amended language, identifying the genus as "popped corn cakes" for the CORN THINS mark and "rice cakes" for the RICE THINS mark. *Id.* at *4.

While recognizing that the amendment narrowed the identification of goods, the TTAB failed to take into account in its determination of the genus under step one that the Applications show that popped corn cakes and rice cakes are types of crispbread slices, which, in turn,

the record defines as types of crackers. *See Frito-Lay*, 2017 WL 914086, at \*3 (relying on Frito-Lay's concession that "the record indisputably show[s] that popped corn and rice cakes are *kinds of crispbreads*" to grant the Motion to Amend (emphasis added) (internal quotation marks and footnote omitted)); *see also* J.A. 94 (defining "crispbreads" as "plain dry unsweetened cracker[s] made from crushed grain"), 169 (defining, in an online dictionary, "crispbread" as "[a] kind of flat, dry bread or cracker"); *cf. In re Hotels.com, L.P.*, 573 F.3d 1300, 1303–04, 1306 (Fed. Cir. 2009) (relying on dictionary definitions to define an individual term within a mark).

This was error. As set forth in Real Foods' Applications and the Motion to Amend, *see* J.A. 279, corn cakes and rice cakes are the species, not the genus, *see Two Pesos*, 505 U.S. at 768. In its Opinion, the TTAB failed to provide any reasoning for its conclusion that the narrowed identification of goods alone was the appropriate genus to use in its genericness analysis. The TTAB's error in identifying the proper genus at step one, thereby affected its analysis at step two. *See Princeton Vanguard*, 786 F.3d at 965.[9] Accordingly, we remand to the TTAB to

---

[9]      For instance, the TTAB determined that the record did not establish "that 'thins' is a generic term for rice cakes or popped corn cakes" or that the term's use "is so ubiquitous" within the genus, *Frito-Lay*, 2017 WL 914086, at \*12, but later found that "*the ubiquity of use* for food products illustrates the term 'thins' is not inherently distinctive for thin food products," *id.* at \*17 (emphasis added). Had the TTAB identified a broader genus of goods, such a determination might bear on, inter alia, the ubiquity with which the term thins is used for that genus and whether the mark "refers to a key aspect of the genus." *Royal Crown*, 892 F.3d at 1368.

reconsider its selected genus and conduct its genericness analysis in light of that genus.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, the Opinion of the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board is

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

## COSTS

Costs to Frito-Lay.