NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: PREMA JYOTHI LIGHT,**

*Appellant*

---

2014-1597

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 76/293,326.

------------------------------------------------------

**IN RE: PREMA JYOTHI LIGHT,**

*Appellant*

---

2014-1598

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 76/293,327.

---

Decided: October 7, 2016

---

PREMA JYOTHI LIGHT, Aurora, CO, pro se.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Michelle K. Lee. Also represented by CHRISTINA HIEBER, THOMAS L. CASAGRANDE, MARY BETH WALKER.

———————————

Before LOURIE, DYK, and O'MALLEY, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Prema Jyothi Light ("Light") appeals from two related U.S. Patent and Trademark Office ("USPTO") Trademark Trial and Appeal Board ("Board") decisions. In the first, Light appeals from the Board's rejection of her application to register the matter shown below as a trademark. *In re Light*, No. 76293326, 2013 WL 6858009, at *6–8 (T.T.A.B. Dec. 13, 2013) ("*Decision I*").



In the second, Light appeals from the Board's rejection of her application to register the matter shown below as a trademark. *In re Light*, No. 76293327, 2013 WL 6858010, at *5–7 (T.T.A.B. Dec. 13, 2012) ("*Decision II*").



For the reasons that follow, we affirm both decisions.

## BACKGROUND

On July 9, 2001, Light filed two applications to register the above-pictured matter as trademarks for use on, *inter alia*, cartoon prints, paper dolls, and coloring books. *Decision I* at \*2; *Decision II* at \*1. The first proposed mark contains stylized wording in the top left-hand corner, "SHIMMERING BALLERINAS & DANCERS CHARACTER COLLECTION," surrounded by three columns of terms "that appear to identify names of a variety of characters." *Decision I* at \*1. Examples of the character names include: "SHIMMERING WIND-HARP BUTTERFLIES JALINDA, JALISA, JAHA, JAJA, JELANI, & JUM" and "THE AIRY BALLERINA & DANCER CLARISSA." *Id.* The entire proposed mark has approximately 660 words and identifies more than ninety character names. *See id.*

The second proposed mark similarly contains stylized wording in the top left-hand corner, "SHIMMERING RAINFOREST CHARACTER COLLECTION," surrounded by columns of "an extremely long list of terms (in

smaller font) identifying names of fictional characters." *Decision II* at *1. The character list includes: "JALINDA THE WIND HARP BUTTERFLY" and "HARRY & HARRIETA, THE HAIRY RAINFOREST SUSPENDER SPIDERS." *Id.* The entire proposed mark has approximately 570 words and identifies more than 125 character names. *See id.*

The examining attorney rejected Light's applications, reasoning that each sought to register multiple marks. In response, Light filed proposed amendments to her marks. The examining attorney rejected the amendments, however, finding that the proposed changes effected material alterations of the subject matter. Light appealed to the Board, but because the appeals were not timely filed, the applications were abandoned.

Light later successfully petitioned to revive her applications, and the Board reinstituted the original appeals. In 2008, the Board remanded the applications to the examining attorney to consider whether the proposed marks constituted registrable subject matter, a different potential basis for rejection. The examining attorney issued Office Actions refusing to register the proposed marks because they "fail to function" as trademarks, and are thus not registrable subject matter. In the Office Actions, however, the examining attorney noted that Light could overcome the failure-to-function rejections by amending the proposed marks to only seek registration of the stylized wording in the top left-hand corners: either the "SHIMMERING BALLERINAS & DANCERS" or the "SHIMMERING RAINFOREST." *Decision I* at *1; *Decision II* at *1.

Light failed to timely respond to those Office Actions, however, and her applications were yet again abandoned. Light again successfully petitioned to revive her applications, and the examining attorney considered Light's responses to the Office Actions. Because Light still

sought registration of the entire proposed marks, however, including the columns of text, the examining attorney maintained the original failure-to-function refusals. Light then resumed her appeals at the Board.

Over the next two years, Light requested several extensions of time and remands to the examining attorney, all of which the Board granted. In June 2011, Light filed a request for reconsideration by the Board. Her request included additional specimens showing alleged trademark use, as well as a new claim that the proposed marks had acquired distinctiveness in accordance with Section 2(f) of the Lanham Act. The Board remanded to the examining attorney to fully consider the request for reconsideration.

Further prosecution of the marks continued in May of 2012 with a different examining attorney. The examining attorney again rejected the proposed marks for failing to function as trademarks. She further clarified that rejection based on the additional specimens, explained why the claims of acquired distinctiveness failed, and rejected the proposed amendments. Light filed responses to the Office Actions, but because her responses were not timely filed, the applications were yet again abandoned.

In January 2013, Light submitted a single petition to revive both abandoned applications, but only paid the fee owed to revive one application, $100. The USPTO accordingly issued a Notice of Deficiency asking for additional payment, another $100, to revive the second application. Light paid that fee, and both applications were revived.

 Light included with her petition additional specimens to support new requested amendments to show the subject matter in color. The examining attorney still refused to register the proposed marks because they fail to function as marks under the Lanham Act, they had not been shown to be a source indicator or to have acquired distinctiveness under Section 2(f), and the requested amend-

ments effect impermissible material alterations of the subject matter.

Light resumed her appeal at the Board, and both parties filed new appeal briefs. *See Decision I* at *2; *Decision II* at *2. The Board issued its now-challenged decisions, affirming the examining attorney's refusal to register the proposed marks. The Board first addressed the failure-to-function rejection and concluded that (1) the number of words is simply "too great to be a useful means for consumers to differentiate one source from another"; (2) the additional specimens do not present the subject matter such that they will be "perceived as trademark[s] or as indicating the source of the applicant's identified goods," but rather the specimens reveal that the matters "merely identif[y] what appears to be a title (of a story, *e.g.*) and a list of fanciful, fictional names"; and (3) the amendments do not help the subject matter to function as trademarks. *Decision I* at *3–6; *Decision II* at *2–5.

The Board next rejected Light's acquired distinctiveness claim because it "appears to rest essentially on her alleged years of use of the applied-for mark in the manner shown in the previously-discussed specimens," yet "th[ose] specimens do not demonstrate trademark use." *Decision I* at *6; *Decision II* at *5. Last, the Board rejected Light's proposed amendments, concluding that they would effect material alterations of the original subject matter. In particular, the Board found that (1) removing the columns and displaying the character names instead in a radial or "starburst" manner "creates a new commercial impression that would necessarily involve a new search by the examining attorney"; (2) converting the proposed stylized mark to a "single standard character mark" would likewise result in a mark "with a very different appearance and commercial impression"; and (3) adding a "colorful background, stars, and rays of light emanating from the top" would "require an additional conflicting mark search." *Decision I* at *7–8; *Decision II* at *6–7.

Light timely appealed from the Board's decisions.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

### DISCUSSION

We review the Board's legal conclusions de novo, *In re Int'l Flavors & Fragrances Inc.*, 183 F.3d 1361, 1365 (Fed. Cir. 1999), and the Board's factual findings for substantial evidence, *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000).  Whether a mark functions as a trademark to identify the source of an entity's goods, *see In re Bush Bros. & Co.*, 884 F.2d 569, 571 (Fed. Cir. 1989), whether a mark has acquired distinctiveness, *see Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1379 (Fed. Cir. 2012), and last, whether a proposed amendment represents a material alteration of a mark, *In re Thrifty, Inc.*, 274 F.3d 1349, 1352 (Fed. Cir. 2001), are all fact questions that we review for substantial evidence.

Light raises several challenges on appeal.  First, Light argues that her proposed marks function as trademarks, and have acquired distinctiveness based on decades of use as such.  In particular, Light contends that the proposed marks are "easily recognizable" and have been "placed on the back cover of leaflets or publications, where Trademarks are customarily found."  *E.g.*, Appellant's Br. 21 (No. 2014-1598).  Second, Light argues that her proposed amendments adding color features to the proposed marks do not effect material alterations, referring to Trademark Manual of Examining Procedure § 807.14(e)(ii) in support.  Third, Light contends that she was "hit" with a "doubled Petition Fee," and only owes $100 for the single petition to revive filed in January 2013.  Last, Light raises a series of administrative challenges to the USPTO's handling of her applications, including, among the alleged "102 Incidents of Document Mishandling," mislabeling documents and uploading "skewed" versions of her proposed marks.  *See, e.g.*, *id.* at 5–14.  We address and ultimately reject each of Light's challenges in turn.

Substantial evidence supports the Board's determination that the proposed marks merely convey information and do not function as trademarks. The mere fact that a party intends a proposed mark to function as a trademark is insufficient. *Roux Labs., Inc. v. Clairol, Inc.*, 427 F.2d 823, 828–29 (C.C.P.A. 1970) ("The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent [that it function as a trademark] does not necessarily mean that the slogan accomplishes that purpose in reality."). Rather, the proposed mark must be perceived by the relevant public as conveying the commercial impression of a trademark. That is, the mark must identify the source of goods. *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1123 (Fed. Cir. 1985) ("Trademarks, indeed, are the essence of competition, because they make possible a choice between competing articles by enabling the buyer to distinguish one from the other." (citation omitted)); *see also* J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition § 3:3 (4th ed. 2014) ("The prime question is whether the designation in question, as actually used, will be recognized in and of itself as an indication of origin for this particular product or service.") (footnote omitted).

The Board made several factual findings in support of its conclusion that the relevant public would not perceive Light's proposed marks as identifying the source of goods. The Board first found that the "sheer number and visual display of the words in the applied-for matter" make it "significantly more difficult" for the public to "perceive[ the proposed mark] as a unitary trademark." *Decision I* at *4; *Decision II* at *3. Each proposed mark contains over 570 words, arranged in column format, and, at core, "identifies what appears to be a title (of a story, *e.g.*) and a list of fanciful, fictional names for characters." *Decision I* at *4; *Decision II* at *4. Although there is no limit on the number of words that can make up a trademark, the Board correctly found here that the exhaustive list of

characters, recited in columnar format, weighs in favor of finding no registrable trademark. *See, e.g., Smith v. M & B Sales & Mfg.*, 13 U.S.P.Q.2d (BNA) 2002 (N.D. Cal. 1990).

The submitted specimens do not suggest otherwise. The cover of the submitted playbook bears the title: "The Triple-Shimmering Shimmering Rainforest, Shimmering Ballerinas & Dancers And Shimmering Breezes Storybook Have Fun Playbook & Storybook For Children." *See* Joint App. 254 (No. 2014-1597). It displays the proposed mark to the right of the Introduction, which similarly contains a list of character names. *Id.* at 257. As the Board found, at best, "readers and users of [the playbook] will understand the applied-for matter as simply identifying a title or theme for the playbook, [and] a corresponding list of character names in the playbook." *Decision I* at \*5; *Decision II* at \*4. Nothing about the use of the proposed marks in the playbook supports Light's argument that the proposed marks operate to identify the source of goods.

Likewise, the submitted leaflets do not indicate a use of the proposed marks as trademarks. As shown below, the leaflet states: "Be sure to look for this unique Shimmering Ballerinas & Dancers Trademark, above, to assure you that you have" the right products, "rather than knock-offs or plagiarized versions." *See* Appellee's Br. 13 (No. 2014-1597); *Decision I* at *5.



Light contends that any reader of the leaflet would necessarily view the proposed mark at the top of the leaflet as the referred-to trademark. We disagree. As the Board instead found, "consumers that read this statement are likely to perceive applicant's reference to the 'Trademark' as referring to the actual 'SHIMMERING BALLERINAS & DANCERS" wording that is referenced in the statement and shown in the 'mark' in a larger, stylized font next to the 'TM' symbol." *Decision I* at \*5; *accord Decision II* at \*4 (same for the second proposed mark). "At best, consumers would perceive SHIMMERING BALLERINAS & DANCERS as being the intended trademark while the CHARACTER COLLECTION (followed by a long list of character names) portion will merely be perceived as informational." *Decision I* at \*5; *accord Decision II* at \*4 (same for the second proposed mark). As with the playbook, nothing about the use of the proposed marks in the leaflet supports Light's argument that the marks operate to identify the source of goods.

Light argues that, notwithstanding the above findings by the Board, her proposed marks have acquired distinctiveness and are thus registrable. We disagree. As the Board found, absent "evidence that the matter has been promoted as a trademark," evidence noticeably absent in this case, "we cannot find that the applied-for mark has acquired distinctiveness regardless of the time the applied-for mark has been used in this manner." *See Decision I* at \*6; *Decision II* at \*5; *see also* Trademark Manual of Examining Procedure § 1202.04 ("The applicant cannot overcome a refusal of trademark registration [for failure to function as a trademark] on the ground that the matter is merely informational by attempting to amend the application to seek registration [under] § 2(f) [(acquired distinctiveness)].").  In sum, no evidence supports Light's contention that her proposed marks constitute registrable trademarks. We accordingly affirm the Board's decisions,

which affirmed the examining attorney's failure-to-function rejections of Light's proposed marks.

Turning to Light's second challenge, we likewise find that substantial evidence supports the Board's rejection of Light's proposed amendments for materially altering the original subject matter. An applicant for trademark must submit a drawing of the mark with the application. *See* 37 C.F.R. § 2.52. The applicant may later submit an amendment to that drawing, however, provided "the proposed amendment does not materially alter the mark." *Id.* § 2.72(a)(2). "The general test of whether an alteration is material is whether the mark would have to be republished after the alteration in order to fairly present the mark for purposes of opposition." *In re Hacot-Colombier*, 105 F.3d 616, 620 (Fed. Cir. 1997) (citation omitted); *accord id.* ("The modified mark must contain what is the essence of the original mark, and the new form must create the impression of being essentially the same mark." (citation omitted)). In addition, the Board regularly invokes Trademark Manual of Examining Procedure § 807.14 for the proposition that "the addition of any element that would require a further search will [also] constitute a material alteration." *See, e.g., In re Pierce Foods Corp.*, 230 U.S.P.Q. (BNA) 307 (T.T.A.B. 1986).

In this case, the Board analyzed Light's three proposed amendments and found that each constituted a material alteration of the subject matter because it would require an additional search by the examining attorney or republication to alert the public for purposes of opposition. *Decision I* at *7–8; *Decision II* at *6–7. Light only appears to challenge one such finding on appeal, namely, the Board's finding that "a colorful background, stars, and rays of light emanating from the top left corner," and removing a not insignificant number of character names under the guise of correcting "typographical errors," amounted to a material alteration of the proposed marks

because "they would clearly require an additional conflicting mark search by the examining attorney." *See Decision I* at *8; *Decision II* at *7. Despite raising such a challenge, however, Light fails to direct us to any record evidence to support her contention. Instead, substantial evidence supports the Board's finding that the aforementioned changes are material alterations. In light of our standard of review, and Light's failure to proffer evidentiary support, we must affirm the Board's rejection of Light's proposed amendments.

Although prosecution of Light's proposed marks has lasted over twelve years, involving numerous issues, the Board expressly acknowledged that it was only addressing two issues in its decision. *See Decision I* at *3; *Decision II* at *2. Specifically, (1) whether the failure-to-function refusal was correct, and the acquired distinctiveness claim insufficient, and (2) whether the examining attorney correctly rejected the proposed amendments for materially altering the proposed marks. *Decision I* at *3; *Decision II* at *2. The Board did not address any other issues, such as Light's alleged administrative impropriety during the course of prosecution, or Light's contention that she overpaid for her revival petition in January 2013. The Board did not address those issues on the grounds that they were not relevant to the appealed action or were untimely. *See Decision I* at *2; *Decision II* at *2. We see no error in the Board's refusal to consider those other issues.

### CONCLUSION

We have considered Light's remaining arguments, but conclude that they are without merit. For the foregoing reasons, we affirm the Board's decisions.

**AFFIRMED**