# United States Court of Appeals for the Federal Circuit

---

## IN RE:  VOX POPULI REGISTRY LTD.,
*Appellant*

---

2021-1496

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 87187215.

---

Decided:  February 2, 2022

---

ROBERT M. O'CONNELL, JR., Orrick, Herrington & Sutcliffe LLP, Boston, MA, argued for appellant.  Also represented by R. DAVID HOSP.

CHRISTINA J. HIEBER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrew Hirshfeld.  Also represented by THOMAS L. CASAGRANDE, CLAUDIA GARCIA, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED.

---

Before LOURIE, DYK, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

Vox Populi Registry Ltd. ("Vox") appeals a final decision of the Trademark Trial and Appeal Board ("Board") affirming the United States Patent and Trademark Office's

("USPTO") refusal of U.S. Trademark Application Serial No. 87/187,215 ("the '215 application") for

("the stylized form of .SUCKS").  We affirm.

## BACKGROUND

Vox is the domain registry operator for the .SUCKS generic top-level domain ("gTLD") for Internet websites.  A registry operator "maintains the master database of all domain names registered in each top-level domain, and also generates the 'zone file,' which allows computers to route Internet traffic to and from top-level domains anywhere in the world."  Trademark Manual of Examining Procedure (TMEP) § 1215.02(d) (8th ed. July 2021); *see generally ICANN Acronyms and Terms*, Internet Corporation for Assigned Names and Numbers, https://www.icann.org/en/icann-acronyms-and-terms/registry-operator-en (last visited Dec. 20, 2021).

Vox filed two trademark applications relevant to this case.  U.S. Trademark Application Serial No. 86/700,941 ("the '941 application") sought registration on the Principal Register of the standard character mark .SUCKS in Class 42 (computer and scientific services) for "[d]omain registry operator services related to the gTLD in the mark" and in Class 45 (personal and legal services) for "[d]omain name registration services featuring the gTLD in the mark" as well as "registration of domain names for identification of users on a global computer network featuring the gTLD in the mark."[1]  J.A. 1–2.

---

[1]    The United States follows the international trademark classifications established by the Committee of Experts of the Nice Union and set forth in the *International*

The '215 application sought to register the stylized form of .SUCKS in Class 42 for "domain registry operator services related to the gTLD in the mark." J.A. 2.

The examining attorney refused both trademark applications "on the ground that, when used in connection with the identified services, each fails to function as a mark." J.A. 2. With respect to the '215 application, the examining attorney determined that Vox's "submitted evidence does not establish that the mark functions as a source identifier." J.A. 347. Vox appealed these refusals to the Board.

In affirming the refusal of the '941 application, the Board concluded that the standard character mark .SUCKS "will not be perceived as a source identifier" and instead "will be perceived merely as one of many gTLDs that are used in domain names." J.A. 21. Turning to the '215 application, the Board incorporated the reasoning with respect to the '941 application, finding "[f]or the reasons given, *supra*, and based on the record before us, we do not find the literal element of this mark, .SUCKS, would be perceived as source-identifying." J.A. 22. The Board further concluded that "the stylized lettering or design element in the mark does not create a separate commercial impression and is not sufficiently distinctive to 'carry' the overall mark into registrability." J.A. 26.

Vox appeals the Board's decision only with respect to the '215 application involving the stylized form of .SUCKS, which appears as a "'retro,' pixelated font that resembles how letters were displayed on early LED screens." Vox Opening Br. at 2. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

---

*Classification of Goods and Services for the Purposes of the Registration of Marks* published annually by the World Intellectual Property Organization. TMEP §§ 1401.02(a)–(b).

## DISCUSSION

### I

Under the Lanham Act, "[n]o [service mark] by which the [services] of the applicant may be distinguished from the [services] of others shall be refused registration on the principal register on account of its nature" subject to certain exceptions. 15 U.S.C. §§ 1052–53. One of these exceptions is that a service mark must function to "identify and distinguish the services of one person . . . from the services of others and to indicate the source of the services." 15 U.S.C. § 1127. A mark that is, for example, generic or descriptive, fails to function as a source identifier, though descriptive marks can be registered if they have acquired secondary meaning in the perception of consumers, *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *see also U.S. Pat. & Trademark Office v. Booking.com B.V.*, 591 U.S. ___, 140 S. Ct. 2298, 2305–07 (2020) (rejecting *per se* rule that "generic.com" names are generic in favor of inquiry based on whether consumers perceive name as generic).

The question whether a proposed mark is a source identifier typically arises before us in the context of whether the proposed mark is descriptive under 15 U.S.C. § 1052(e). *E.g.*, *Brooklyn Brewery Corp. v. Brooklyn Brew Shop*, 17 F.4th 129 (Fed. Cir. 2021); *In re Stereotaxis, Inc.*, 429 F.3d 1039 (Fed. Cir. 2005). Our predecessor court recognized that the source identifier and descriptiveness inquiries are "complementary and opposite sides of the same coin to the extent that a mark . . . is 'merely descriptive' of the goods." *In re Cooper*, 254 F.2d 611, 613 (CCPA 1958). However, though our court has had limited occasion to address the issue, the source identifier requirement is broader than just whether a proposed mark is generic or descriptive. *See, e.g.*, *In re Light*, 662 F. App'x 929, 934–35 (Fed. Cir. 2016) (affirming Board's decision that a proposed mark failed to function as a source identifier where it

contained over 570 words arranged in column format identifying titles and characters from a story and thus merely conveyed information); *see also Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 162–63 (1995) (color never identifies source except upon a showing of secondary meaning).

The Board's cases provide helpful additional detail on source identifiers. In analyzing whether a proposed mark functions as a source identifier, the Board focuses on consumer perception. *See, e.g.*, *In re AC Webconnecting Holding B.V.*, 2020 U.S.P.Q.2d (BL) 11048, 2020 BL 350997, at *3 (T.T.A.B. 2020). *See generally* 1 *McCarthy on Trademarks and Unfair Competition* § 3.4 (5th ed.). The Board looks to "the [Applicant's] specimens and other evidence of record showing how the designation is actually used in the marketplace" to determine "how the designation would be perceived by the relevant public." *In re Eagle Crest Inc.*, 96 U.S.P.Q.2d (BL) 1227, 1229 (T.T.A.B. 2010). The Board has determined that certain categories of applications fail to function as a source identifier, such as matter that "merely convey[s] general information about the goods or services or an informational message." TMEP § 1202.04; *see, e.g.*, *D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2d (BL) 1710, 1716 (T.T.A.B. 2016) (refusing "I ♥ DC" for bags, clothing, and plush toys because "the nature of the phrase will be perceived as informational" and "the ubiquity of the phrase . . . on apparel and other souvenirs of many makers has given it a significance as an expression of enthusiasm").

## II

Vox does not appeal the rejection of the standard character mark .SUCKS in the '941 application. Nonetheless, Vox spends much of its opening brief arguing that "even if . . . we disregard the distinctive design elements in the [stylized form of .SUCKS], . . . the evidence of record establishes that the mark still functions as a service mark and

is entitled to registration." Vox Opening Br. at 15. To the extent that the Board's factual findings with respect to the standard character mark .SUCKS are at issue, we review them for substantial evidence. *In re Cordua Rests., Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016). Substantial evidence "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). We conclude that the Board did not err in finding the standard character mark not registrable, and we need not reach the question whether Vox's claim with respect to the standard character mark is barred by the doctrine of administrative preclusion.[2]

Substantial evidence supports the Board's finding that "consumers will view [the standard character mark .SUCKS] as only a non-source identifying part of a domain

---

[2]    Agency adjudications at the USPTO are entitled to res judicata and collateral estoppel effect. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 160 (2015). This case does not involve traditional concepts of res judicata or collateral estoppel since the proceeding is ex parte and not adjudicatory. The doctrine of administrative preclusion, similar to res judicata, may preclude repetitive applications in some circumstances. *See generally In re Barratt's Appeal*, 14 App. D.C. 255, 255–57 (D.C. Cir. 1899); *Overland Motor Co. v. Packard Motor Car Co.*, 274 U.S. 417, 421 (1927); *In re Hitchings*, 342 F.2d 80, 85 (CCPA 1965); *In re Craig*, 411 F.2d 1333, 1336 (CCPA 1969); *In re Bose Corp.*, 476 F.3d 1331, 1334, 1337 (Fed. Cir. 2007); 4 *Chisum on Pats.* § 11.03[5][b].

name, rather than as a mark." J.A. 21. Specimens from Vox's website use .SUCKS to refer to a product (domain names ending in .SUCKS), J.A. 38–43, for example, advertising the "exceptional value" in "Registry Premium names" like "life.sucks and divorce.sucks," J.A. 42. Online articles discussing Vox and domain names similarly use .SUCKS to refer to a product rather than as an identifiable provider of services. J.A. 82–94, 96–101. Third-party domain name registrars (a subset of Vox's customers) also use .SUCKS to refer to a product being sold to the public rather than as an identifier for Vox's services. J.A. 64–81.

Vox relies on a declaration by its COO stating that Vox "has spent substantial sums in the advertising and promotion of its services under the .SUCKS brand (irrespective of design format)," J.A. 134, and referencing sample advertising and marketing materials using the stylized form of .SUCKS in the context of trade shows, J.A. 135–38. The declaration states that "[a]s evidence of its successful branding, [Vox] has experienced double-digit growth in domain registrations year-over-year since the domain debuted in 2015." J.A. 135. Advertising and sales volumes, while relevant, are not by themselves dispositive of how consumers perceive a mark. *See Am. Footwear Corp. v. Gen. Footwear Co. Ltd.*, 609 F.2d 655, 663 (2d Cir. 1979); *In re Kwik Lok Corp.*, 217 U.S.P.Q. 1245, 1248 (T.T.A.B. 1983). The Board found that "[a]lthough this type of evidence helps show [Vox's] intention to present the [stylized form of .SUCKS] in manners that are customary for service marks, this does not mean that consumers will perceive it as such," and additionally determined that "the evidence showing that consumers will perceive .SUCKS as merely a gTLD outweighs [Vox's] attempts to depict it as a source identifier." J.A. 25.

The record also contains declarations by two of Vox's domain name registrar customers testifying that they perceive .SUCKS as a service mark. J.A. 140–41. The Board found this evidence "probative," even though "these

declarants may be more knowledgeable than the average consumer seeking to register a domain name." J.A. 16. Vox argues on appeal that the Board should have afforded the declarations more weight because the declarants comprised 50% of the relevant actual consumers (registrars) for Vox's domain name registry services at the time of the declaration. Vox's own statements, to the Board and on its website, view the class of relevant consumers more broadly: Vox noted that, as a domain name registry, it "work[s] with registrars to sell domain names to the public," J.A. 374 n.4, and its website appears to target the general public for the sale of domain names, J.A. 38 ("dotSucks domains are exclusively available through our accredited Registrars. Below you will find a list of them all.").

We cannot conclude that the Board's weighing of the evidence was unreasonable. Where the Board has reasonably weighed the evidence, it is not the role of this court to reweigh evidence to reach a different conclusion, and we do not do so here.

## III

The sole remaining question then is whether the stylized design makes the stylized form of .SUCKS registrable.

Design or stylization may make an otherwise unregistrable mark registrable if the features "create an impression on the purchasers separate and apart from the impression made by the words themselves." *Cordua*, 823 F.3d at 606 (quoting *In re Sadoru Grp., Ltd.*, 105 U.S.P.Q.2d (BL) 1484, 1486 (T.T.A.B. 2012)). This evaluation is "necessarily a subjective matter which must be determined based on a viewer's first impression." *Sadoru*, 105 U.S.P.Q.2d (BL) at 1486; *see, e.g.*, *In re Clutter Control Inc.*, 231 U.S.P.Q. (BL) 588, 589 (T.T.A.B. 1986) (finding

created a "striking commercial impression" due to the "tubelike rendition of the letter 'C' in the words"); *In re Jackson Hole Ski Corp.*, 190 U.S.P.Q. (BL) 175, 176 (T.T.A.B. 1976) (finding

created a separate impression due to the initial letters' sizing and positioning). In contrast, this court has rejected a proposed mark where the form of the lettering was insufficiently distinctive. *See In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1560–61 (Fed. Cir. 1985) (finding

unregistrable for ring cake mix). In *Sadoru*, the Board similarly rejected

(a stylized version of the Japanese word for "saddle") as a proposed mark for motorcycle parts and accessories, noting that the proposed mark appeared to be "more in the nature of slightly stylized block lettering" than Japanese calligraphy and that "although the tops of the letters 'dip' to give the upper portion of the mark a slightly concave shape, the depression is so minimal that it is not likely to make a significant impression on consumers." *Sadoru*, 105 U.S.P.Q.2d (BL) at 1489.

We see no error in the Board's determination that the stylized form of .SUCKS fails to create a separate commercial impression. The Board noted that in the stylized form of .SUCKS, "[a]ll of the characters in the applicant's mark are the same height and width and are merely displayed in a font style that was once mandated by the technological limitations of computer screens." J.A. 23–24 (quoting examiner). Vox cites to *In re Serial Podcast, LLC*, 126 U.S.P.Q.2d (BL) 1061 (T.T.A.B. 2018), to support its argument that "even fonts with limited stylization render the marks distinctive," Vox Opening Br. at 11, but that is an inaccurate characterization of the case. In *Serial*, the Board found that the wording, lettering, coloring, and geometric background components of



were not inherently distinctive and that "even viewed all together" were "on the less distinctive part of the spectrum." 126 U.S.P.Q.2d at 1075. The Board nonetheless found that the stylized marks had acquired distinctiveness for a podcast in a serialized format and were therefore registrable. *Id.* at 1078.

Vox cites to declarations from its customers "testifying that they perceive .SUCKS – *on its own, regardless of stylization* – as a service mark of [Vox]." Vox Opening Br. at 24 (emphasis in original). These declarations are unpersuasive because as Vox itself acknowledged in its briefing, the declarations are made without regard to the stylization of the stylized form of .SUCKS and do not mention the stylization at all, which is the relevant inquiry here. *See also* Oral Arg. at 7:27–31. In light of the absence of contrary evidence, the Board reasonably concluded that "given the ubiquity of the design in the 'early days' of computing,

consumers would view pixelated lettering as ordinary" rather than as a source identifier.  J.A. 25.[3]

## CONCLUSION

The Board's decision affirming the refusal of the '215 application is affirmed.

## **AFFIRMED**

---

[3]    To be sure, because we are not dealing with a generic mark, acquired distinctiveness may make the stylized form of .SUCKS registrable "if it can be shown by evidence that the particular display which the applicant has adopted has acquired distinctiveness." *Cordua*, 823 F.3d at 606 (quoting *Sadoru*, 105 U.S.P.Q.2d (BL) at 1486). There is no claim or evidence of acquired distinctiveness in this case.  J.A. 26.