# United States Court of Appeals for the Federal Circuit

---

**IN RE: GO & ASSOCIATES, LLC,**
*Appellant*

---

2022-1961

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 88944728.

---

NONPRECEDENTIAL OPINION ISSUED:  November 13, 2023
PRECEDENTIAL OPINION ISSUED:  January 22, 2024[*]

---

PAUL W. KRUSE, Spencer Fane LLP, Nashville, TN, for appellant.  Also represented by KYLE L. ELLIOTT, Kansas City, MO.

BRADLEY HINSHELWOOD, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for appellee Katherine K. Vidal.  Also represented by BRIAN M. BOYNTON, DANIEL TENNY; CHRISTINA J. HIEBER, FARHEENA YASMEEN RASHEED, MARY BETH WALKER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

---

[*]    This opinion is being issued as a precedential opinion pursuant to a request by the U.S. Patent and Trademark Office under Fed. Cir. R. 32.1(e).

Before LOURIE, REYNA, and HUGHES, *Circuit Judges.*

LOURIE, *Circuit Judge.*

GO & Associates, LLC ("GO") appeals from a decision of the United States Trademark Trial and Appeal Board ("the Board") affirming the examining attorney's final refusal to register GO's applied-for mark: "EVERYBODY VS RACISM." *In re GO & Assocs., LLC*, No. 88944728, 2022 WL 1421542 (T.T.A.B. Apr. 20, 2022) ("*Decision*"). Because substantial evidence supports the Board's conclusion, we affirm.

## BACKGROUND

On June 2, 2020, GO filed an application seeking registration on the principal register of "EVERYBODY VS RACISM" in standard characters. It identified the goods and services as:

> Tote bags;
>
> T-shirts, hoodies as clothing, tops as clothing, bottoms as clothing, and head wear; and
>
> Promoting public interest and awareness of the need for racial reconciliation and encouraging people to know their neighbor and then affect change in their own sphere of influence.

J.A. 32.

In a non-final office action, the examining attorney refused to register the mark because it failed to function as a source identifier for GO's goods and services. J.A. 40. Rather, the examining attorney observed, the mark was "an informational social, political, religious, or similar kind of message that merely conveys support of, admiration for, or affiliation with the ideals conveyed by the message." *Id.* As support for the refusal, the examiner cited dozens of examples of the mark being used in informational (rather

than source-identifying) ways. *Id.* For example, the examiner provided evidence that the mark had been used by referees in the National Basketball Association; in titles of rap songs, podcasts, church sermons, and YouTube videos; and on various articles of clothing. *See id.* at 43–96 (cited evidence).

GO responded by arguing that its uses of the mark were source-identifying, while those relied upon by the examining attorney were "merely ornamental third party uses of EVERYBODY VS RACISM on clothing," which could not function as a trademark. *Id.* at 106. It also argued that the third-party uses of the mark in speech, rap songs, podcasts, church sermons, and the like did not render the mark incapable of functioning as a trademark. *Id.* at 108. To support its position, GO submitted search engine optimization evidence, allegedly showing that the mark was "almost never used or searched" before GO began using it in May 2020, and that GO's successful policing of the mark throughout the summer of 2020 led to "a significant drop in searches." *Id.* at 106–08.

But the examining attorney was not persuaded and concluded that competitors' ornamental uses of the mark only reinforced the fact that consumers would likely view the mark "as a sentiment rather than a source." *Id.* at 183 ("The evidence showing the wearing of shirts with 'EVERYBODY VS RACISM' by NBA referees during their protest walk out shows that they wore the shirts to convey meaning, and that meaning was understood by those who saw the referees."). The examining attorney also observed that GO's search engine evidence showed that public use of the mark aligned with the general timeline of the "heated anti-racism protests throughout the nation in the wake of the George Floyd killing." *Id.* That evidence therefore did little to show that the public perceived the mark as a source identifier. Because granting GO the right to exclude others from using the mark to promote racial reconciliation "would seriously impede the heartfelt need of citizens of the country to express that everybody should be against

racism," the examining attorney finally refused registrability of the mark. *Id.*

GO appealed to the Board. Finding that the record as a whole "show[ed] wide use of the proposed mark in a non-trademark manner to consistently convey an informational, anti-racist message to the public," as opposed to a source identifier of GO's goods and services, the Board affirmed the examiner's refusal to register the mark. *Decision* at *7, *10.

GO appeals from the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a).

## DISCUSSION

The Lanham Act conditions the registrability of any mark on its ability to distinguish an applicant's goods and services from those of others. *See* 15 U.S.C. §§ 1052, 1053. In other words, it is a threshold requirement of registrability that the mark "identify and distinguish" the goods and services of the applicant from those of others, as well as "indicate the source" of those goods and services. *Id.* § 1127; *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023) ("[A] trademark is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand)."); *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 429 (2023) (Jackson, J., concurring) ("It is clear beyond cavil that what makes a trademark a trademark under the Lanham Act is its source-identifying function.").

As we recently observed, "whether a proposed mark is a source identifier typically arises before us in the context of whether the proposed mark is descriptive under 15 U.S.C. § 1052(e)." *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1351 (Fed. Cir. 2022) (collecting cases). But "the source identifier requirement is broader than just whether a proposed mark is generic or descriptive," and typically focuses on how the mark is used in the

marketplace and how it is perceived by consumers. *See id.*; *see also In re Light*, 662 F. App'x 929, 934–35 (Fed. Cir. 2016) (affirming Board's refusal to register a mark containing over 570 words arranged in column format because the "sheer number and visual display" of the words made it "significantly more difficult" for the public to perceive the mark as a unitary trademark (internal quotation marks and citation omitted)); *D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2d 1710 (T.T.A.B. 2016) (refusing to register "I ♥ DC" for use on apparel and souvenirs because it "would be perceived by purchasers and prospective purchasers as an expression of enthusiasm for the city of Washington, DC," as opposed to an indicator of the source of the goods on which it appeared). If the nature of a proposed mark would not be perceived by consumers as identifying the source of a good or service, it is not registrable. *See Jack Daniel's*, 599 U.S. at 145. As relevant here, the PTO enforces the source-identifying statutory requirement, in part, by prohibiting the registrability of what it calls "informational matter." *See* TMEP § 1202.04(b) (precluding from trademark protection "informational matter," such as slogans, terms, and phrases used by the public to convey familiar sentiments, because consumers are unlikely to "perceive the matter as a trademark or service mark for any goods and services.").[1]

Whether or not a mark functions as a source identifier is a question of fact that we review for substantial evidence. *Vox Populi*, 29 F.4th at 1351–52. A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Applying that standard to the case before us, we conclude that the Board's determination that "EVERYBODY VS RACISM" does not function as a source identifier for GO's products (*i.e.*, tote bags and apparel) or services (*i.e.*, promoting awareness of

---

[1]     Throughout its brief, GO refers to this general rule as the "Informational Matter Doctrine."

the need for racial reconciliation) was supported by substantial evidence.

In reaching its conclusion, the Board properly considered the evidence of record, which included not only the third-party evidence identified by the examining attorney, but also GO's specimens and other evidence of its own use of the mark. *See Decision* at *3–4. Based on the totality of evidence, the Board agreed with the examining attorney that the third-party uses of the mark "show[] that 'everybody vs racism' is commonly used in an informational and ornamental manner on clothing items, tote bags, and other retail items sold by third-parties to convey an anti-racist sentiment." *Id.* at *6. The Board also found that the evidence showed that the mark frequently appeared "in opinion pieces, in music, podcasts, and YouTube videos, and by organizations (websites) that support efforts to eradicate racism." *Id.* Considering the diversity and breadth of third-party uses, the Board found that GO's own specimens and uses were insufficient to render the mark source-identifying. *Id.* at *7 ("As to [GO's] services, consumers would perceive EVERYBODY VS RACISM as merely an informational statement against racism rather than a service mark."). And significantly, as the Board observed, GO did not argue that *any* of the dozens of third-party uses of "EVERYBODY VS RACISM" were trademark uses attributable to GO—a finding GO does not challenge on appeal. *Id.*; *cf. In re Nat'l Ass'n to Advance Black Birth*, No. 90581377, 2022 WL 4385036, at *6 (T.T.A.B. Aug. 23, 2022) ("The record indicates that the mark, as used on the specimens, would be associated with Applicant, the National Association to Advance Black Birth, by itself, *even though it may also be used by third parties*." (emphasis added)).

GO's challenge on appeal amounts to nothing more than a disagreement with the weight the Board assigned to the conflicting evidence. *See, e.g.*, GO Br. at 14 ("[T]he Board discounted [GO]'s specimens and evidence critical to understanding a modern consumer's perception of the Mark, and instead relied on less convincing and irrelevant

information."). But the Board properly considered both GO's uses and third-party uses when assessing how the public would likely perceive the mark. And reweighing the evidence "is not the role of this court." *In re Charger Ventures LLC*, 64 F.4th 1375, 1381 (Fed. Cir. 2023).

Contesting this conclusion, GO asserts that "[p]*er se* refusals based on the Informational Matter Doctrine are unconstitutional" because they "involve[] content-based discrimination that is not justified by either a compelling or substantial government interest." GO Br. at 8–9 (quoting *In re Elster*, 26 F.4th 1328, 1331 (Fed. Cir. 2022), *cert. granted sub nom. Vidal v. Elster*, 143 S. Ct. 2579 (2023)). This argument is meritless.

As an initial matter, *Elster* is inapposite. In that case, there was no issue as to whether or not the applied-for mark, "TRUMP TOO SMALL," functioned as a source identifier. *See id.* at 1330. The same is true for the other registered marks GO cites, such as "MAKE AMERICA GREAT AGAIN," Registration No. 5,020,556; "The Slants," *Matal v. Tam*, 582 U.S. 218 (2017); and "FUCT," *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019).

What is more, however, is that GO's constitutional argument is based on a faulty premise: that the Patent and Trademark Office's ("PTO") application of the so-called "Informational Matter Doctrine" results in the *per se* refusal of any mark that contains informational matter, regardless whether or not consumers perceive the mark as source-identifying. That is not true. Indeed, one can immediately envision many marks, such as GO's own example, MAKE AMERICA GREAT AGAIN, that contain informational matter (*e.g.*, widely used slogans), but nevertheless function as source identifiers. Consider, for example, Nike's "JUST DO IT," De Beers's "A DIAMOND IS FOREVER," or Verizon's "CAN YOU HEAR ME NOW?" The fundamental purpose of a trademark or service mark is to identify and distinguish *the source* of a particular good or service. If the PTO were to allow the registration of marks that are used by the public in such a way that they cannot be

attributed to a single source, the purpose of trademark law would be undermined to the detriment of the public who would be no longer free to express common sentiments without the threat of "paying a licensing fee to someone who sees an opportunity to co-opt a political message." *Decision* at \*10 (citing J.A. 298); *cf. Jack Daniel's*, 599 U.S. at 157 (deeming it the "cardinal sin" of the Lanham Act to undermine the source-identifying function of a trademark). Contrary to GO's position, nothing in the Lanham Act or the PTO's so-called "Informational Matter Doctrine" prohibits registration of a mark containing informational matter, so long as the mark also functions to identify a single commercial source. On this record, "EVERYBODY VS RACISM" fails to meet that requirement. We therefore reject GO's constitutional challenge.

We have considered GO's remaining arguments, and none has merit. Accordingly, because we find that substantial evidence supports the Board's conclusion that the public is unlikely to associate the mark "EVERYBODY VS RACISM" as a source identifier of GO's goods and services, we affirm.

## CONCLUSION

For the foregoing reasons, we affirm the Board's refusal to register "EVERYBODY VS RACISM."

**AFFIRMED**